# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-3928

T.D.,

*Plaintiff-Appellee,*

v.

LAGRANGE SCHOOL DISTRICT NO. 102,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 2071—**James B. Zagel**, *Judge.*

———————

ARGUED MAY 20, 2003—DECIDED NOVEMBER 14, 2003

———————

Before COFFEY, KANNE, and DIANE P. WOOD, *Circuit Judges.*

KANNE, *Circuit Judge.* Congress enacted the Individuals With Disabilities Education Act ("IDEA") with the primary purpose of ensuring that a "free appropriate public education" is available to all children with disabilities. 20 U.S.C. § 1400(d)(1)(A) (2003). To facilitate this goal, the IDEA requires schools to have in place procedures that allow parents to make complaints regarding "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education" to their child. *Id.* § 1415(b)(6). If the parents' concerns cannot be satisfactorily resolved through informal channels, the IDEA provides parents a right to me-

diation or an impartial due process hearing conducted by the appropriate state educational agency. *Id.* § 1415(e)(1), (f)(1). If parents are still unsatisfied following a due process hearing, they may then bring a civil action in federal or state court. *Id.* § 1415(i)(2)(A). To ease the financial burden on parents making claims, the IDEA contains a fee-shifting provision that allows attorney's fees to the parents of a child with a disability who are the "prevailing party" in any action or proceeding brought under the IDEA. *Id.* § 1415(i)(3)(B).

In this appeal we address whether the plaintiff, T.D., is a prevailing party under this fee-shifting provision and whether T.D. is thereby eligible for attorney's fees.[1] The district court, finding that the Supreme Court's recent decision in *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001), did not apply to the IDEA, held that T.D. was entitled to attorney's fees. We hold that *Buckhannon* does apply to the IDEA, but find that T.D. is still entitled to a portion of his attorney's fees. We also find that the district court erred in finding that T.D. was entitled to receive reimbursement under the IDEA for his expert witness fees.

## I. History

### A. Background

T.D., born June 24, 1991, is a strong-willed child, who was diagnosed with Attention Deficit Hyperactivity Disorder at an early age. His parents enrolled him in private pre-schools and elementary schools through the early part of 1997. On February 4, 1997, during T.D.'s kindergarten

---

[1] For simplicity we refer to T.D.'s eligibility for attorney's fees, recognizing that any award of fees would be made to his parents. *See* 20 U.S.C. § 1415(i)(3)(B) (2003).

year, he was dismissed from a parochial school after the school determined that it did not have the special-education resources needed to properly educate him. The parochial school offered to refer T.D. to the local public school for services, but at that time his parents refused to allow the parochial school to make the referral.

A week after T.D. was dismissed from the parochial school, his parents took him to the University of Chicago's Hyperactivity, Attention, and Learning Problems Clinic for an independent evaluation. That evaluation recommended, *inter alia*, that T.D. attend a school with a low teacher: student ratio and noted that the best setting for T.D. would likely be a private, therapeutic day school.

In March and April of 1997, T.D.'s mother spoke at various times with the public school district's Director of Special Ed, Mary Ann Cusick. During these conversations, T.D's. mother sought information about the school district's special-education programs and apparently expressed some reluctance to enroll T.D. in the school district, based on T.D.'s older brother's experience there. At some point during this period, T.D.'s mother visited the local public school that T.D. would attend. During this visit, she met with the principal and the kindergarten teacher, and the school provided her with further information about the special-education services that would be available to T.D. within the context of the regular classroom setting. At no point during March or April of 1997, did the school district request written consent to conduct a case-study evaluation of T.D. to determine his potential eligibility for various special-education programs.

In September 1997, T.D.'s parents enrolled him in the first grade at Acacia Academy, a private therapeutic day school. Acacia, however, would only allow T.D. to attend full-time if his parents hired a one-on-one aide to accom-

pany him. After a short period of attending only part-time, T.D.'s parents hired an aide and thereafter T.D. attended full-time.

## B. Due Process Administrative Proceedings

On August 25, 1997, approximately five months after T.D.'s mother first contacted the public school district officials, T.D.'s parents requested, through their attorney, a due process hearing before a state administrative hearing officer as provided for by § 1415(f) of the IDEA. In their hearing request, T.D.'s parents alleged that the school district had (i) "fail[ed] to evaluate T.D. despite actual notice that he may require special-education services;" (ii) "fail[ed] to notify" them that the school district "had decided not to conduct a case study evaluation;" (iii) "fail[ed] to consider their independent evaluation;" and (iv) "fail[ed] to appropriately advise them of the placement options for T.D. within the public school setting" other than "full inclusion placements, in a regular classroom setting." T.D.'s parents claimed that as a result of these failures the school district had denied T.D. the "free, appropriate public education" guaranteed by the IDEA.

Part of the relief requested by T.D.'s parents was that the school conduct an evaluation to determine T.D.'s eligibility under the IDEA for special-education services. On October 15, 1997, the hearing officer conducted a pre-hearing conference on this issue, after which the hearing officer determined that a case-study evaluation was necessary and ordered the school to conduct the evaluation. Following this order, on November 20, 1997, the school conducted the evaluation and convened an Individualized Education Program ("IEP") conference, as required by the IDEA § 1414. As a result of the evaluation and conference, T.D. was determined to have an "Emotional/Behavioral Disorder" and a "Speech and/or Language Impairment," and was

found eligible for special-education services from the school district. The school district recommended that T.D. be placed at the local public school in a regular-education classroom, with supplemental special-education services to address T.D.'s special needs. T.D.'s parents rejected the recommended placement.

The administrative due process hearing commenced on December 5, 1997. The parents sought: (i) reimbursement for their placement of T.D. at Acacia for the 1997-1998 academic year; (ii) reimbursement for the one-on-one aide to assist T.D. at the private school; (iii) reimbursement for T.D.'s transportation to and from Acacia; and (iv) reimbursement for the independent evaluation they had obtained from the University of Chicago.

In a ruling rendered on December 10, 1997, the hearing officer made findings that as of the last week of March 1997, the school district knew that T.D. might require special-education services and should have requested the parent's written consent to conduct a case-study evaluation of T.D. at that time. Further, pursuant to the case study, the school should have identified the student's needs and formulated program and service options. It was not until the hearing officer ordered the evaluation that these things were accomplished. The hearing officer found that the school district's failings contributed to the parents need to place T.D. in the private school and to obtain a one-on-one aide. Therefore, the hearing officer ordered the school district to reimburse T.D.'s parents for their out-of-pocket costs for the one-on-one aide, a cost of about $1130 per month and for the costs of transportation to the school, a cost of about $5 per ride, from September 17 until the school district could provide the appropriate services. As to T.D.'s educational placement, however, the hearing officer found that the private school in which T.D. was enrolled could not adequately meet his needs. Therefore, he denied reimbursement for the private school tuition, and he

ordered that T.D. be transferred to a regular mainstream classroom at the local public school with supplemental special-education services.

## C. District Court Proceedings and Settlement

T.D. appealed to federal district court, seeking reversal of the proposed placement in a regular classroom, asking instead for continued placement at the private day school. Further, he sought reimbursement of the tuition already paid by his parents for the day school. He also asked for the relief already granted by the hearing officer, namely the reimbursement of the one-on-one aide cost and transportation costs. Finally, he sought attorney's fees and costs.

Both parties moved for summary judgment, but before the district court ruled, the parties settled. The settlement agreement provided that T.D. would be placed in a self-contained behavior disordered program (as opposed to a regular classroom) in a public school. The school district agreed to reimburse T.D.'s parents for tuition and all costs in any way resulting from or relating to T.D.'s attendance at the private day school, a total of $52,000. The parties did not reach an agreement regarding attorney's fees, specifically leaving the issue for decision by the district court.

The district court rendered its decision on attorney's fees on October 7, 2002, holding that T.D. was a "prevailing party" and therefore was entitled to attorney's fees under the IDEA's fee-shifting provision. In finding that T.D. was a prevailing party, the district court noted that he had succeeded on a significant issue when he obtained the case-study evaluation, which determined that he was eligible for special-education services. The court went on to state:

> [I]rrespective of how much Parents prevailed in the hearing or in my Court, I find that Parents obtained

> through settlement the balance of what they desired and TD needed. TD's placement in a self-contained behavior disordered classroom in a public school is the direct result of Parent's litigation on the issue of TD's placement and the settlement represents a significant departure from La Grange's proposal to educate TD in a regular mainstream classroom with a one-on-one aide.

Importantly, the district court held that the Supreme Court's recent decision in *Buckhannon* did not apply to the IDEA. The district court expressly stated that it was not deciding whether attorney's fees would be appropriate under the strictures of *Buckhannon*.

The district court awarded T.D. $117,135.53 in attorney's fees and costs. The school district now appeals that decision.

## II.  Analysis

### A.  *Buckhannon* and the IDEA

The IDEA, like many other federal statutes, provides that courts may award attorney's fees to a "prevailing party":

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party.

20 U.S.C. § 1415(i)(3)(B) (2003). In *Buckhannon*, the Supreme Court limited the meaning of the term "prevailing party," by rejecting the catalyst theory as a method of attaining prevailing-party status under the Americans With Disabilities Act ("ADA") and Fair Housing Amendments Act ("FHAA"). 532 U.S. at 605. Under the catalyst theory, which had been accepted by many courts before *Buckhannon*, a plaintiff could prevail, if the plaintiff's suit was a catalyst

that prompted the change that the plaintiff sought. *Buckhannon*, however, held that a party could not be a prevailing party without receiving some sort of "judicial imprimatur" on the charge. *Id.* at 605. Central to the Court's conclusion was its finding that the term "prevailing party" was "a legal term of art," which signified that the party that had been granted relief by a court. *Id.* at 603. As examples of the type of relief necessary to attain "prevailing party" status, the court cited a judgment on the merits and a consent decree. *Id.* at 604.

The school district argues that since this case was ultimately resolved through a private settlement, without a judicial imprimatur, T.D. does not qualify as a "prevailing party" under the Supreme Court's explanation of that term in *Buckhannon*. T.D. counters that *Buckhannon*'s rules are inapplicable to the IDEA. Therefore, the threshold issue in this case is whether *Buckhannon*'s limitations on the meaning of the term "prevailing party" apply.

Although *Buckhannon* involved only claims under the "prevailing party" fee-shifting provisions of the ADA and FHAA,[2] there is little doubt that the *Buckhannon* Court intended its interpretation of the term "prevailing party" to have broad effect upon similar fee-shifting statutes. The Court observed that Congress has passed many statutes that authorize courts to award attorney's fees to the "prevailing party," such as 42 U.S.C. § 1988, and that the Court has interpreted those fee-shifting provisions consistently across the federal statutes. *Buckhannon*, 532 U.S. at

---

[2] In relevant part the ADA provides: "The court . . ., in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 12205 (2003). And the FHAA provides: "The court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2) (2003).

602-03 & n.4 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, n.7 (1983), which held that the standards used in interpreting the term "prevailing party" are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"). Moreover, as noted above, the Court described the term "prevailing party" as a "legal term of art," with the relatively fixed and accepted meaning of "a party in whose favor a judgment is rendered." *Id.* at 603 (citing BLACK'S LEGAL DICTIONARY 1145 (7th ed. 1999)). Therefore, one would conclude that if a statute contains this legal term of art that has been interpreted consistently across statutes, we should exercise great caution before we give that term a different meaning. *See Me. Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R.*, 321 F.3d 9, 14 (1st Cir. 2003) ("Because [the IDEA] employs the phrase 'prevailing party'—a term of art—it must be interpreted and applied in the same manner as other federal fee-shifting statutes that use the same phraseology.").

Given these considerations, at least one circuit has interpreted *Buckhannon* as applying to all "prevailing party" fee-shifting statutes. *See Smyth v. Rivero*, 282 F.3d 268, 274 (4th Cir. 2002) (holding that *Buckhannon* applies to 42 U.S.C. § 1988 and stating "[t]he term 'prevailing party,' as used in § 1988(b) and other fee-shifting provisions, is a 'legal term of art,' and is interpreted consistently—that is, without distinctions based on the particular statutory context in which it appears.") (quotations and citations omitted). While there is some appeal to the simplicity of this position, this Court has not yet gone that far. Rather, we have left open the possibility that if the "text, structure, or legislative history" of a particular fee-shifting statute indicate that the term "prevailing party" in that statute is not meant to have its usual meaning—as defined in *Buckhannon*—then *Buckhannon's* strictures may not apply.

We reiterate, however, that because "prevailing party" is a legal term of art that is interpreted consistently across fee-shifting statutes, there is a strong presumption that *Buckhannon* applies to each fee-shifting statute that awards fees to "prevailing parties." Consequently, for this Court to find that *Buckhannon* does not apply to the IDEA, a "prevailing party" fee-shifting statute, the "text, structure, or legislative history" would have to clearly indicate that in the IDEA, Congress did not intend to use the term "prevailing party" in its traditional "term of art" sense.

The district court below held that the text of the IDEA set it apart from other statutes. We acknowledge that the IDEA's text and structure is somewhat more complex than other "prevailing party" fee-shifting statutes because the IDEA not only states that attorney's fees are available to "prevailing parties," but it also contains limiting provisions in §§ 1415(i)(3)(D)-(G), which specify certain situations where attorney's fees are unavailable or must be reduced. For instance, § 1415(i)(3)(D)(i) provides that a party may not receive attorney's fees incurred subsequent to a settlement offer if the court or hearing officer determines that the relief finally obtained by the plaintiff is not more favorable than the settlement offer. Section 1415(i)(3)(D)(ii) provides in relevant part that attorney's fees may not be awarded (at the discretion of the state) for work done in mediation conducted before the filing of a formal request for a hearing. And § 1415(i)(3)(F)-(G) instructs district courts to reduce an attorney's fee award when the plaintiff has "unreasonably protracted the final resolution of the controversy."

T.D. argues that these provisions create an implication that Congress intended the term "prevailing party" as used in the IDEA to include more than just parties that obtain judicially sanctioned relief. The arguments are quite strained, however, as none of these provisions clearly indicate a Congressional intent about anything related to the

"prevailing party" requirement. *John T. v. Del. County Intermediate Unit*, 318 F.3d 345, 557 (3d Cir. 2003). "Rather, §§ 1415(i)(3)(D) through (G) define situations in which attorney's fees may be prohibited or reduced" even for "prevailing parties." *Id.* For instance, if a plaintiff rejects a settlement offer and eventually receives a judicially sanctioned victory that is less beneficial than the settlement offer was, the plaintiff, though being a "prevailing party," may not get the fees incurred after the settlement offer. 20 U.S.C. § 1415(i)(3)(D)(i). Or, as § 1415(i)(3)(D)(ii) provides, if a party pursues an unsuccessful mediation and eventually obtains a victory with judicial imprimatur, then he may receive attorney's fees for the unsuccessful mediation if it occurred after the filing of a complaint. Or, if a plaintiff who eventually obtains judicially sanctioned success unreasonably protracted the resolution of the case, the court may reduce the attorney's fee award to account for the unreasonable delay. *Id.* § 1415(i)(3)(G).

The bottom line is that these limiting provisions do not clearly indicate that the term "prevailing party" was intended to encompass anything more in the IDEA than in any of the other "prevailing party" fee-shifting statutes. In fact, these provisions do not inform anything about the meaning of the term "prevailing party" in the IDEA because they are relevant only after a plaintiff has been deemed a "prevailing party."

We turn next to the legislative history. As both the Second and Third Circuits have recognized, the legislative history of the IDEA seems to indicate that Congress did not intend the IDEA to be interpreted any differently from other prevailing party fee-shifting statutes. *See John T.*, 318 F.3d at 557; *J.C. v. Reg'l Sch. Dist. 10*, 278 F.3d 119, 124 (2d Cir. 2002). When Congress added the fee-shifting provision to the IDEA's predecessor statute, the Education of the Handicapped Act, the Senate Committee on Labor and Human Resources provided that "it is the committee's

intent that the terms 'prevailing party' and 'reasonable' be construed consistently with the U.S. Supreme Court's decision in *Hensley v. Eckerhart*," which involved 42 U.S.C. § 1988. S. Rep. No. 99-112, at 13 (1986), *reprinted* in 1986 U.S.C.C.A.N. 1798, 1803 (footnote omitted). We have followed this principle by interpreting the IDEA consistently with § 1988. *See, e.g.*, *Bd. of Educ. v. Steven L.*, 89 F.3d 464, 468 (7th Cir. 1996) ("'Prevailing party' has the same meaning under 20 U.S.C. § 1415(e) as 42 U.S.C. § 1988."). And importantly, *Buckhannon* made clear that its strictures applied to § 1988. *See, e.g.*, *J.C.*, 278 F.3d at 124. From the legislative history then, it appears that *Buckhannon* should be applied to the IDEA.

In addition to the textual and legislative history arguments, T.D. makes essentially two policy arguments, which he claims show that *Buckhannon* should not be applied to the IDEA. We approach these arguments with caution because the *Buckhannon* Court itself, in analyzing the policy arguments made in that case, stated: "Given the clear meaning of 'prevailing party' in the fee-shifting statutes we need not determine which way these various policy arguments cut." 532 U.S. at 610. Consequently, it is not clear that the Supreme Court has left any room for this Court or any other "to interpret anew the term 'prevailing party' in light of the IDEA policies." *John T.*, 318 F.3d at 558.

T.D. contends that the statute is designed to facilitate early, informal resolution of controversies between schools and students. According to T.D., this is an important goal of the IDEA because delay in finding an appropriate school setting can be detrimental to a child's development. T.D. maintains that this goal would be undermined if we found that private settlements do not entitle plaintiffs to attorney's fees because parents and attorneys would have an incentive to reject settlement offers and thereby delay the final resolution of the proceedings.

We recognize the importance and benefit of quick resolution to any litigation; particularly, litigation that involves the educational placement of a child. But many of the same factors that make quick resolution through settlement beneficial under the IDEA apply to the statutes that were at issue in *Buckhannon* as well. For instance, there are surely strong policy reasons for quickly resolving a disabled person's claims under the ADA. Nonetheless, *Buckhannon* held that ADA plaintiffs may receive attorney's fees only upon receipt of some judicially sanctioned victory. In other words, *Buckhannon* simply has closed the door on this argument. *John T.*, 318 F.3d at 557; *J.C.*, 278 F.3d 124. Moreover, in response to the same policy argument that T.D. makes here—that settlement is to be encouraged under the IDEA and therefore we should allow attorney's fees for settlement—the Second Circuit noted:

> [I]t is difficult to reconcile [the] policy argument for awarding fees pursuant to informal settlements with the fact that, even before *Buckhannon*, Congress deliberately chose not to allow the recovery of attorneys' fees for participation in IEP proceedings that were not convened as a result of an administrative proceeding or judicial action. 20 U.S.C. § 1415(i)(3)(D)(ii). The IEP Team is a mechanism for compromise and cooperation rather than adversarial confrontation. This atmosphere would be jeopardized if we were to encourage the participation of counsel in the IEP process by awarding attorneys' fees for settlements achieved at that stage.

*J.C.*, 278 F.3d at 124-25.

T.D.'s second policy argument centers around the stated purpose of the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education . . . to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). T.D. contends that if the IDEA's "prevailing

party" provision is interpreted to preclude the award of fees to parties that settle, then students who must hire an attorney and whose claims are ultimately resolved through private settlement will be denied the *free* appropriate education promised by the IDEA because they will be saddled with large legal fees.

While this is probably T.D.'s strongest argument, we are still not persuaded. We note that the IDEA only guarantees the right to a free education; it does not explicitly guarantee the right to attorney's fees incurred in pursuit of that education. *Cf. Edie F. v. River Falls Sch. Dist.*, 243 F.3d 329, 336 (7th Cir. 2001) ("Clearly . . . parents . . . have a right to champion their [child's] cause, but the right to have their attorneys fees picked up by the taxpayers is more circumspect."). Therefore, it is not clear that it would be against the purpose of the IDEA to require plaintiffs who do not achieve judicial imprimatur on their victory to bear their own attorney's fees. Furthermore, in light of *Buckhannon*, which made explicit that "prevailing party" has a clearly established meaning that overrides various policy arguments, we are constrained to reject T.D.'s contention on this point.

Moreover, we do not take lightly the fact that virtually every court to have decided the issue has determined that *Buckhannon* applies to the IDEA. For instance, the only two federal appellate courts, the Second and Third Circuits, that have squarely addressed the issue have both held *Buckhannon* applicable to the IDEA.[3] *See John T.*, 318 F.3d

---

[3] Also, though the district court below, recognizing that it was a "very close issue," ultimately held that *Buckhannon* did not apply to the IDEA, *T.D. v. La Grange Sch. Dist. No. 102*, 222 F. Supp. 2d 1062, 1065 (N.D. Ill. 2002), that is clearly the minority position among district courts. In a number of other cases in the Northern
(continued...)

at 556; *J.C.*, 278 F.3d at 125; *see also Smyth v. Rivero*, 282 F.3d 268, 274 (4th Cir. 2002) (stating that *Buckhannon* applies to all "prevailing party" fee-shifting provisions, regardless of "the particular statutory context."); *John & Leigh T. v. Iowa Dept. of Educ.*, 258 F.3d 860, 863-64 (8th Cir. 2001) (assuming that *Buckhannon* applies to the IDEA but not discussing the issue). Today, we join the Second and Third Circuits in holding that *Buckhannon* is applicable to the IDEA.

## B. T.D.'s Status as a Prevailing Party Under *Buckhannon*

As noted above, *Buckhannon* held that to be a "prevailing party" a litigant must have obtained a judgment on the merits, a consent decree, or some similar form of judicially sanctioned relief. 532 U.S. at 603-04. In *Buckhannon*, the Court specifically noted that "[p]rivate settlement agreements do not entail the judicial approval and oversight involved in consent decrees. And federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the

---

[3] (...continued)
District of Illinois, it has been held that *Buckhannon* applies to the IDEA. *See, e.g., Koswenda v. Flossmoor Sch. Dist. No. 161*, 227 F. Supp. 2d 979, 989 (N.D. Ill. 2002); *Jose Luis R. v. Joliet Township High Sch. Dist.*, No. 01 C 4798, 2002 U.S. Dist. LEXIS 20916, at *9-10 (N.D. Ill. Jan. 14, 2002). Likewise, numerous other district courts have concluded that *Buckhannon* applies to the IDEA. *See, e.g., Jane Doe v. Boston Pub. Sch.*, 264 F. Supp. 2d 65 (D. Mass. 2003); *Matthew V. v. DeKalb County Sch. Sys.*, 244 F. Supp. 2d 1331, 1341-42 (N.D. Ga. 2003); *Adams v. Dist. of Columbia*, 231 F. Supp. 2d 52, 54-55 (D.D.C. 2002); *Ostby v. Oxnard Union High*, 209 F. Supp. 2d 1035 (C.D. Cal. 2002).

order of dismissal." 532 U.S. at 604 n.7. Therefore, the Court left the clear impression that private settlements do not involve sufficient judicial sanction to confer "prevailing party" status. *See Christina A. v. Bloomberg*, 315 F.3d 990, 993 (8th Cir. 2003); *Smyth*, 282 F.3d at 279.

The merits of this case were ultimately resolved through a settlement between the parties. We agree with the Fourth Circuit's recent conclusion that some settlement agreements, even though not explicitly labeled as a "consent decree" may confer "prevailing party" status, if they are sufficiently analogous to a consent decree. *Smyth*, 282 F.3d at 281. For instance, "[w]here a settlement agreement is embodied in a court order such that the obligation to comply with its terms is court-ordered, the court's approval and the attendant judicial oversight (in the form of continuing jurisdiction to enforce the agreement) may be . . . functionally a consent decree." *Id*; *see also John T.*, 318 F.3d at 558 (stating that "a stipulated settlement could confer prevailing party status . . . . where it (1) contained mandatory language, (2) was entitled 'Order,' (3) bore the signature of the District Court judge, not the parties' counsel, and (4) provided for judicial enforcement") (emphasis omitted) (citation omitted).

The settlement agreement in this case does not bear any of the marks of a consent decree. It is not embodied in a court order or judgment, it does not bear the district court judge's signature, and the district court has no continuing jurisdiction to enforce the agreement. Rather, it was merely a private settlement agreement between the parties. T.D. argues that because the district court was actively involved in the settlement negotiations, having conducted a settlement conference in his chambers and made certain settlement suggestions, that we should find that there was sufficient "judicial imprimatur" on the settlement to confer "prevailing party" status.

Mere involvement in the settlement, however, is not enough. There must be some official judicial approval of the settlement and some level of continuing judicial oversight. *Buckhannon*, 532 U.S. at 604 n.7; *Smyth*, 282 F.3d at 281. Therefore, we find that the settlement agreement reached in this case did not confer "prevailing party" status upon T.D.

T.D. asserts that even if he cannot be said to have prevailed via the settlement, that he was the "prevailing party" in the due process hearing and therefore should be compensated at least for that success. The parties do not dispute that the IDEA's fee-shifting provision allows courts to grant attorney's fees to parents who prevail in an administrative hearing. Indeed, we held in *Brown v. Griggsville Comm. Unit Sch. Dist. No. 4*, that the IDEA does allow fees to the prevailing party in administrative hearings. 12 F.3d 681, 683-84 (7th Cir. 1993). While we recognize that this opinion was issued before *Buckhannon*, we do not perceive that *Buckhannon* requires a different conclusion.

The IDEA's fee-shifting provision allows attorney's fees to the party that prevails "[i]n any action or proceeding" brought under the IDEA. 20 U.S.C. § 1415(i)(3)(B). As other courts have noted, the word "proceeding" as used in other parts of the statute refers to administrative or due process hearings. *See, e.g.*, *id.* § 1415(d)(2)(F) & (k)(7)(C)(I) ("due process proceedings"); *Id.* § 1415(i)(2)(B)(I) & (i)(3) (D)(ii) ("administrative proceedings"); *L.C. v. Warterbury Bd. of Educ.*, No. 3:00 CV 580, 2002 U.S. Dist. LEXIS 6079, at *7-8 (D. Conn. Mar. 21, 2002). And the Court in *Buckhannon* gave no indication that it intended to overturn its decision in *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54 (1980). That case held that the fee-shifting provision in Title VII, which also referred to "action or proceeding," allowed courts to award attorney's fees to the prevailing party in administrative hearings. *Id.* at 61.

The school district does not dispute that to the extent that T.D.'s parents prevailed at the due process hearing, they are eligible for fees for that success. The school district disputes only whether T.D. prevailed at the due process hearing at all. The Supreme Court has stated that a plaintiff may be considered a "prevailing party" if "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433 (noting that this is a "generous formulation"). We find that while T.D. did not succeed on every issue at the due process hearing, he did prevail on certain significant issues and achieved at least some of the benefit he sought.

In his hearing request, T.D. sought to have the school district conduct a case-study evaluation to determine his eligibility for benefits under the IDEA. And he sought reimbursement for various costs incurred in attending the private day school, including tuition, a one-on-one aide, and transportation. The hearing officer granted T.D.'s request for an evaluation by the school district, ordering the school to conduct the evaluation on November 20, 1997. Significantly, the hearing officer placed blame on the school district for not requesting written consent to conduct the evaluation, even though they had notice that T.D. might have been eligible for IDEA benefits. The case-study evaluation and IEP conference that followed, determined that T.D. was in fact eligible for IDEA benefits and proposed placement of T.D. at public school in a regular-education classroom, with supplemental special-education services to address T.D.'s needs. This determination represented some success for T.D. because prior to his request for the due process hearing the school had not acknowledged that T.D. was even eligible for IDEA benefits.

The hearing officer partially granted T.D.'s requests for reimbursement for the costs of attending the private school, awarding reimbursement for the cost of the one-on-one aide

and for transportation, but refusing to grant reimbursement for the cost of tuition. The hearing officer characterized this partial relief as an equitable award. He found that the private day school was not providing T.D. with an appropriate education; therefore, he did not award T.D. reimbursement for the cost of the tuition. The hearing officer, however, found that the school district was at least partly to blame for T.D.'s inappropriate placement at the private school since the school district failed to conduct an evaluation of T.D. and failed to offer T.D. any formal placement proposal before the November 20, 1997 evaluation and conference. Considering these failures, the hearing officer ordered the school district to reimburse T.D. for the cost of the one-on-one aid from the time she was hired until T.D. could be enrolled in the public school. And the cost of transportation to the private school was also ordered to be reimbursed.

T.D. succeeded in obtaining the case-study evaluation that the school previously had not conducted and that ultimately led to the determination that he was eligible for benefits under the IDEA. This success coupled with the reimbursement he received for the cost of the one-on-one aid and transportation to the private school (which together added up to nearly $1200 a month) rendered T.D. a "prevailing party" in the administrative hearing. Therefore, we find that T.D. is entitled to attorney's fees for prevailing at the administrative hearing.

## C. Award of Expert Witness Fees

Finally, the school district challenges the district court's award of expert witness fees to T.D. as part of the attorney's fees and costs of the litigation. Because we determined that T.D. was a prevailing party as to the administrative hearing, we must consider whether T.D. should receive expert witness fees incurred as part of that hearing.

Title 28 U.S.C. § 1920 is the general provision that provides for the taxation of costs in federal court, and § 1920(3) allows for payment of witnesses.[4] In 28 U.S.C. § 1821(b), Congress placed a limit on the witness fees authorized by § 1920(3), providing that "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance." In *Crawford Fitting Co. v. J.T. Gibbons*, the Supreme Court held that "when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary." 482 U.S. 437, 439 (1987). Therefore, we must look to the IDEA's fee-shifting provision to determine if it contains "explicit statutory authority" for shifting of expert witness fees.

As cited above, the IDEA's fee provision states:

> In any action or proceeding brought under this section, the court, in its discretion, may award *reasonable attorney's fees as part of the costs* to the parents of a child with a disability who is the prevailing party.

20 U.S.C. § 1415(i)(3)(B) (emphasis added). T.D. relies on the italicized portion of the statute as authority to shift expert witness fees to the losing party. This provision, however, does not provide any explicit statement as to expert witness fees.

The only federal appellate court to address the issue of expert witness fees under the IDEA held that the IDEA did not contain the necessary explicit authority to exceed the amounts provided for in 28 U.S.C. § 1821(b). *Neosho R-V*

---

[4] In relevant part § 1920 provides: "A judge or clerk of any court of the United States may tax as costs the following: . . . (3) Fees and disbursements for printing and witnesses." 28 U.S.C. § 1920 (2003).

*Sch. Dist. v. Clark*, 315 F.3d 1022, 1031 (8th Cir. 2003). We agree with the Eighth Circuit's reasoning and conclusion. In *Neosho*, the Eighth Circuit acknowledged that the construction of the IDEA's fee provision appears to contemplate that costs include something more than attorney's fees, "but [it] does not specifically authorize an award of costs or define what items are recoverable as costs." *Id.* Absent a specific authorization for the allowance of expert witness fees, "federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." *Id.* (quoting *Crawford Fitting Co.*, 482 U.S. at 445).

Furthermore, in *W. Va. Univ. Hosp., Inc. v. Casey*, the Supreme Court was faced with the question of whether a former version 42 U.S.C. § 1988 gave authority to shift expert fees. 499 U.S. 83, 84 (1991). This former version of § 1988 contained a fee-shifting provision, almost identical to that in the IDEA, allowing "the prevailing party . . . a reasonable attorney's fee as part of costs."[5] 42 U.S.C. § 1988(b) (1990). The *Casey* Court held that this language was not an explicit statutory authorization that allowed shifting of expert witness fees. 499 U.S. at 102.

In so holding, the Court observed that Congress had specifically enacted several statutes that explicitly provided for the shifting of both attorney's fees and expert witness fees. *Id.* at 88-89 (noting that "[a]t least 34 statutes in 10 different titles of the U.S. Code explicitly shift attorney's fees *and* expert witness fees."). The Court concluded that if it were to interpret a statute that provides only for attorney's fees to actually allow shifting of both attorney's fees

---

[5] Following the Supreme Court's decision in *Casey*, Congress amended § 1988 by adding subsection (c), which provides: "In awarding an attorney's fee under subsection (b) of this section . . . the court in its discretion may include expert fees as part of the attorney's fee." 28 U.S.C. § 1988 (2003).

and expert fees, the "dozens of statutes referring to the two separately [would] become an inexplicable exercise in redundancy." *Id.* at 92. Obviously, these same concerns exist for the IDEA, which uses nearly identical statutory language.

T.D. argues that the legislative history of the IDEA supports allowing expert witness fees to the prevailing party. That legislative history, in the form of a House Conference report, states:

> The conferees intend that the term "attorney's fees as part of the costs" include reasonable expenses and fees of expert witnesses and the reasonable costs of any test or evaluation which is found to be necessary for the preparation of the . . . case.

H.R. Conf. Rep. No. 99-687, at 5 (1986), reprinted in 1986 U.S.C.C.A.N. 1807, 1808. We recognize that this report does appear to support T.D.'s position. The Eighth Circuit, however, rejected this identical argument, finding that since "[n]othing in the plain language of the statute indicates that the district court is authorized to exceed the limitations set out in § 1821 and § 1920," there is no ambiguity in the statute, and therefore "no occasion to look to the legislative history." *Neosho*, 315 F.3d at 1032 (citing *Burlington N. R.R. v. Okla. Tax Comm'n*, 481 U.S. 454, 461 (1987) ("Unless exceptional circumstances dictate otherwise, when we find the terms of a statute unambiguous, judicial inquiry is complete.")).

The *Casey* Court in dicta characterized this portion of the IDEA's legislative history as "an apparent effort to depart from ordinary meaning and to define a term of art," noting that "the specification would have been quite unnecessary if the ordinary meaning of the term included those elements." 499 U.S. at 91 n.5. We agree with the Eighth Circuit's determination that "this 'apparent effort' to define a term of art in legislative history is an unsuccessful one."

*Neosho*, 315 F.3d at 1032. The Supreme Court made clear in *Crawford* that "explicit statutory authorization" was necessary to allow courts to exceed the limitations of 28 U.S.C. § 1821 and § 1920. We find no such authorization in the IDEA, particularly, in light of the fact that the Supreme Court in *Casey* found that the same words used in the former § 1988 ("reasonable attorney's fee as part of costs") did not provide the necessary explicit statutory authorization.

### III.  Conclusion

We hold that the Supreme Court's requirements for attaining prevailing party status set out in *Buckhannon* are applicable to the IDEA. We find that the settlement reached between the parties in this case was no more than a private agreement, lacking the judicial imprimatur to elevate T.D. to the status of prevailing party. T.D.'s success in the administrative hearing, however, does entitle him to receive attorney's fees to the extent that he prevailed in that hearing. Finally, we hold that expert witness fees are not available to T.D. under the IDEA. Therefore, we AFFIRM in part and REVERSE in part. The case is REMANDED to the district court for a determination of the amount of attorney's fees to which T.D. is entitled based on the degree of success he achieved in the administrative hearing.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*