CANADY, J.,
dissenting.
I would affirm the Fourth District’s decision for two reasons. First, the interpretation of the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (MMWA) attorney-fee provision should adhere to the reasoning of Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). That reasoning points to the inescapable conclusion that the private settlement between Mady and DaimlerChrysler was insufficient to qualify Mady for the recovery of fees under the MMWA because that settlement did not involve a court-ordered or judicially sanctioned change in the legal relationship of the parties. Second, the MMWA specifically provides that a finally prevailing con *1138 sumer may recover attorney fees “as part of the judgment.” The statute thus clearly contemplates that attorney fees will be awarded only if some other relief is awarded by way of a judgment. No such relief was awarded to Mady.
In the MMWA, Congress authorized the award of attorney fees to the consumer only “[i]f a consumer finally prevails.” 15 U.S.C. § 2310(d)(2) (emphasis added). The majority’s conclusion that “a consumer who resolves a legal action with a warrantor pursuant to Florida’s offer of judgment statute constitutes a prevailing party under the MMWA and may recover attorneys’ fees as allowed by that statute” cannot be reconciled with Buckhannon’s understanding of what is necessary for a litigant to be a prevailing party. Majority op. at 18.
In Buckhannon, the plaintiff sought an award of attorney fees and expenses as the prevailing party in a case under the Fair Housing Amendments Act of 1988 (FHAA) and the Americans with Disabilities Act of 1990(ADA). 532 U.S. at 601, 121 S.Ct. 1835. Buckhannon Board and Care Home, Inc. (BBCH), which operated care homes providing assisted living to their residents, failed a fire inspection because some of the homes’ residents were incapable of “self-preservation” under state law. Id. at 600-01, 121 S.Ct. 1835. BBCH instituted an action seeking declaratory and injunctive relief on the ground that the self-preservation requirement violated the FHAA and ADA. Id. Before the case was resolved on the merits, the State eliminated the self-preservation requirement, and the case was dismissed as moot. Id. at 601, 121 S.Ct. 1835. BBCH moved for costs and attorney fees, which the trial court denied. Id. at 602, 121 S.Ct. 1835. BBCH “argued that they were entitled to attorney’s fees under the ‘catalyst theory,’ which posits that a plaintiff is a ‘prevailing party’ if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant’s conduct.” Id. at 601, 121 S.Ct. 1835.
The Supreme Court affirmed the denial of attorney fees, holding that the circumstances of the case could not support the conclusion that BBCH was a prevailing party. See id. at 602, 605, 121 S.Ct. 1835. The Supreme Court specifically rejected the “catalyst theory,” concluding that “[i]t allows an award where there is no judicially sanctioned change in the legal relationship of the parties.” Id. at 605, 121 S.Ct. 1835. According to the Supreme Court, its caselaw reflects the settled view that “a ‘prevailing party’ is one who has been awarded some relief by the court.” Id. at 603, 121 S.Ct. 1835 (emphasis added). For example, “enforceable judgments on the merits and court-ordered consent decrees create the ‘material alteration of the legal relationship of the parties’ necessary to permit an award of attorney’s fees.” Id. at 604, 121 S.Ct. 1835 (quoting Texas State Teachers Assn. v. Garland Ind. Sch. Dist., 489 U.S. 782, 792-93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). “Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-ordered ‘chang[e] [in] the legal relationship- between [the plaintiff] and the defendant.’ ” Id. (alterations in original) (citation omitted) (quoting Garland, 489 U.S. at 792, 109 S.Ct. 1486). Additionally, “settlement agreements enforced through a consent decree may serve as the basis for an award of attorney’s fees.” Id. But private settlements alone “do not entail the judicial approval and oversight involved in consent decrees.” Id. at 604 n. 7, 121 S.Ct. 1835. Similarly, the catalyst theory is problematic because “[a] defendant’s voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprima *1139 tur on the change.” Id. at 605, 121 S.Ct. 1835. Indeed, the Supreme Court emphasized that “[n]ever have we awarded attorney’s fees for a nonjudicial ‘alteration of actual circumstances.’” Id. at 606, 121 S.Ct. 1835.
The Supreme Court considered the argument that “prevailing party” should be read to include the “catalyst theory” based on legislative history which included a committee report stating that “parties may be considered- to have prevailed when' they vindicate rights ... without formally obtaining relief.” Id. at 607, 121 S.Ct. 1835. The Supreme Court expressed its “doubt that legislative history could overcome ... the rather clear meaning of ‘prevailing party’ — the term actually used in the statute.” Id. The Supreme Court concluded that “the legislative history cited by petitioners is at best ambiguous as to the availability of the ‘catalyst theory' for awarding attorney’s fees.” Id. at 607-08, 121 S.Ct. 1835. Such legislative history was not sufficient to displace the well-established - meaning of “prevailing party”: “Particularly in view of the ‘American Rule’ that attorney’s fees will not be awarded absent ‘explicit statutory authority,’ such legislative history is clearly insufficient to alter the accepted meaning of the statutory term.” Id. at 608, 121 S.Ct. 1835 (citing Key Tronic Corp. v. United States, 511 U.S. 809, 819, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994)).
Although Buckhannon only dealt with the fee-shifting provisions of the FHAA and the ADA, there is no basis for applying a different line of reasoning to the MMWA. The Buckhannon court understood “prevailing party” as a legal term of art to be interpreted consistently across fee-shifting statutes. 532 U.S. at 603 n. 4, 121 S.Ct. 1835. “[T]he principles underlying Buckhannon’s holding are broadly stated and are not statute-specific.” Doe v. Boston Pub. Sch., 358 F.3d 20, 25 (1st Cir.2004); see also John T. v. Del. Cnty. Intermediate Unit, 318 F.3d 545, 556-57 (3d Cir.2003) (applying Buckhannon to the Individuals with Disabilities Education Act and noting that “Buckhannon heralded its wider applicability”). Indeed, the Buckhannon court referenced the MMWA when it cited the appendix in Marek v. Chesny, 473 U.S. 1, 43-51, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) (appendix to opinion of Brennan, J., dissenting), which lists over 100 federal fee-shifting statutes, including the MMWA. See Buckhannon, 532 U.S. at 603, 121 S.Ct. 1835. In a footnote immediately following the reference to the Marek appendix, the Supreme Court stated: “We have interpreted these fee-shifting provisions consistently, and so approach the nearly identical provisions at issue here.” Id. at 603 n. 4, 121 S.Ct. 1835 (citation omitted). The fact that the text of the MMWA reads “finally prevails” instead of “prevailing party” is thus of no consequence.
When we are called on to interpret and apply a federal statute authorizing the award of attorney fees to a prevailing party, we are bound by Buckhannon’s explication of what it means to be a prevailing party. We should diverge from Buckhannon ’s reasoning- only when the federal statute at issue provides a clear basis for concluding that Congress did not use the prevailing-party terminology in the “traditional ‘term of art’ sense” explained in Buckhannon. T.D. v. LaGrange Sch. Dist. No. 102, 349 F.3d 469, 475 (7th Cir.2003). Here, there is no such basis.
Under Buckhannon, the mere entry of a settlement agreement is not sufficient to confer “prevailing party status.” Buckhannon is crystal clear in its holding that a litigant can be considered a prevailing party only when the litigant “has been awarded some relief by the court.” 532 U.S. at *1140 603, 121 S.Ct. 1835 (emphasis added). Where the parties have entered a settlement, “[t]here must be some official judicial approval of the settlement and some level of continuing judicial oversight.” LaGrange Sch. Dist. No. 102, 349 F.3d at 479 (emphasis added). There can be no “ ‘judicial imprimatur’ on the cha[n]ge” in the legal relationship of the parties as required by Buckhannon in the absence of such “official judicial approval” of a settlement. Id. at 474, 479; see also John T., 318 F.3d at 558 (noting that a stipulated settlement could confer prevailing party status under circumstances where the settlement (1) contained mandatory language, (2) was entitled “Order,” (3) bore the signature of the district court judge, not the parties’ counsel, and (4) provided for judicial enforcement); Util. Automation 2000, Inc. v. Choctawhatchee Elec. Co-op., Inc., 298 F.3d 1238, 1248-49 (11th Cir.2002) (finding plaintiff .prevailed where district court, pursuant to Federal Rule of Civil Procedure 68, entered “an enforceable judgment against the defendant” based on accepted offer of judgment); Smyth ex rel. Smyth v. Rivero, 282 F.3d 268, 281 n. 10 (4th Cir.2002) (holding that its precedent “[upholding] awards of attorney’s fees based on private settlements not integrated into consent decrees or court orders ... do[es] not survive Buckhannon's rejection of private settlements as a basis for prevailing party status.”); N.Y. State Fed’n of Taxi Drivers, Inc. v. Westchester Cnty. Taxi & Limousine Comm’n, 272 F.3d 154, 158-59 (2d Cir.2001) (reversing grant of fees where the parties entered a private settlement and the district court simply entered an order dismissing the case as moot).
Here, there was no award of “some relief by the court,” no “official judicial approval of the settlement,” and no “judicial imprimatur” on the change in the parties’ relationship. As the Fourth District noted, “[t]here simply was no court-ordered change in the relationship of the parties in this case by the plaintiffs acceptance of DaimlerChrysler’s proposal for settlement.” Mady, 976 So.2d at 1215. Unlike the situation where there is a consent decree, the trial court here did not review or approve the agreement and played no role in changing the legal relationship between the parties. The court had no involvement whatsoever in the settlement entered into by the parties. That reality is not altered by the majority’s bare assertion that “any offer made and accepted pursuant to Florida’s offer of judgment statute is ... under the auspices of the court in which the offer is made and accepted” and thus “bears the imprimatur of the court.” Majority op. at 1132-33. Imprimatur means “approval.” Webster’s Third New International Dictionary of the English Language 1137 (1993). Contrary to the majority’s assertion, a judicially enforceable agreement is not equivalent to a judicially approved or sanctioned agreement. The prospect that some relief may be available in the future does not meet Buckhannon’s requirement that a litigant “has been awarded some relief by the court.” 532 U.S. at 603, 121 S.Ct. 1835 (emphasis added).
In both San Martin v. DaimlerChrysler Corp., 983 So.2d 620 (Fla. 3d DCA 2008), and Dufresne v. DaimlerChrysler Corp., 975 So.2d 555 (Fla. 2d DCA 2008), the district courts — like the majority here— inappropriately focus on the parties’ actions rather than on judicial action to determine whether the settlements were akin to consent decrees. In San Martin, the court stated that “the use of the procedural vehicle [section 768.79, Florida Statutes] as it was employed by the parties in this case removes their arrangement from that of a private settlement or voluntary cessation.” 983 So.2d at 625. Similarly, the court in Dufresne focused on the nature of the settlement and the fact that the settle *1141 ment pursuant to section 768.79 gave the trial court the authority to enforce the agreement. 975 So.2d at 557. However, Buckhannon’s reasoning necessarily turns on the court’s actions — not the private parties’ actions — as the basis for determining whether there is a judicially sanctioned change in the legal relationship of the parties.
Beyond the “finally prevails” terminology in the statute, the text of the attorney-fee provision of the MMWA expressly points to the conclusion that attorney fees will be awarded only in conjunction with other relief from the court. The MMWA provides that “[i]f a consumer finally prevails ..., he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys’ fees based on actual time expended).” 15 U.S.C. § 2310(d)(2) (emphasis added). The statute thus provides that the award of attorney fees is ancillary to the granting of other relief by the court. The statute does not contemplate that fees will be awarded apart from some other relief obtained by way of a judgment.
Mady relies on legislative history to support his argument that Buckhannon's reasoning should not apply to the MMWA. Mady cites a Senate committee report that states that an injured consumer “may resort to formal adversary proceedings with reasonable attorney’s fees available if successful in the litigation (including settlement).” S.Rep. No. 93-151, at 22-23 (1973). This argument is no more persuasive than the legislative-history argument rejected in Buckhannon. Mady’s argument should be rejected for the same reasons that the Supreme Court rejected the similar argument presented in Buckhannon. The legislative history relied on by Mady is at the very best ambiguous. Although it mentions “settlement,” it is silent concerning whether such a settlement must be sanctioned by a judgment entered by the court. Such ambiguous legislative history “is clearly insufficient to alter the accepted meaning” of the statutory text. Buckhannon, 532 U.S. at 608, 121 S.Ct. 1835. The text of the MMWA is if anything clearer on the question at issue than was the text considered by the court in Buckhannon.
Accordingly, I would affirm the Fourth District’s decision that is on review and disapprove Dufresne and San Martin.
POLSTON and LABARGA, JJ., concur.