James C. CHAGNON and Karen L. Chagnon, Plaintiffs,

v.

TOWN OF SHREWSBURY, Defendant.

Civ. A. No. 94–40196–NMG.

United States District Court, D. Massachusetts.

Oct. 18, 1995.

C. Peter R. Gossels, Weston, Patrick, Willard & Redding, Boston, MA, for Plaintiffs.

Mary Ellen P. Sowyrda and Nicola Favorite, Murphy, Hesse, Toomey & Lehane, Quincy, MA, for Defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

This action was brought by plaintiffs to recover attorneys' fees and costs in the amount of $18,878.94 which they incurred in their efforts to secure a free appropriate public education for their five-year old, handicapped son (referred to herein as "L") pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* Plaintiffs also seek attorneys' fees and expenses that they have incurred in prosecuting this matter. Pending before this Court are motions filed by each party for judgment on the pleadings, and defendant's motion for reference to a master pursuant to Fed.R.Civ. Proc. 53(b).

## I. BACKGROUND

On May 9, 1994, the Shrewsbury School Committee offered plaintiffs an Individualized Education Plan (IEP) which would place L in a kindergarten program at the Beal Early Childhood Center for the 1994–95 school year.

On May 12, 1994, plaintiffs rejected the School Committee's IEP because it lacked a summer school component, as had been recommended by L's doctors, and a number of other criteria, such as a description of specific, measurable objectives. On May 17, 1994, plaintiffs requested an emergency hearing on the proposed IEP before the Massachusetts Bureau of Special Education Appeals (BSEA).

Two days later, defendant made a formal offer of settlement whereby defendant would fund a summer component for L for the 1994 summer, in addition to its original offer to place L at the Beal Center for the following school year. Plaintiffs rejected that settlement offer and refused to withdraw their appeal on the grounds that they believed that 1) L would achieve his "maximum possible development" at the May Center for Education and Neurorehabilitation rather than at the Beal Center and 2) the proposed IEP was "deficient and unlawful."

The BSEA hearing was held on June 21 and 22, 1994, after which the hearing officer made an emergency oral order requiring summer placement for L until she could reach a final decision. The officer's written decision issued on July 22, 1994 concluded that L should be placed in the Beal Center program, as originally proposed by defendant, but ordered that a specific, comprehensive behavior plan be incorporated into a new IEP for L. The new IEP was to be developed after a diagnostic period in which some of the deficiencies that plaintiffs found in the original IEP were to be explored and addressed.

On September 8, 1994, the School Committee offered a new IEP to plaintiffs which was accepted.

Plaintiffs now argue that, by rejecting the defendant's proposed IEP, appealing the IEP to the BSEA, and obtaining an order from the BSEA hearing officer which required summer placement and a specific, comprehensive behavior plan for their son, plaintiffs were the "prevailing party" in the BSEA hearing within the meaning of 20 U.S.C. § 1415(e)(4)(B). That section provides, in relevant part, that the court has discretion to "award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party."

Defendant argues that because the BSEA hearing officer ultimately placed L in the Beal Center program as originally proposed by the defendant, and not in the May Center as plaintiffs repeatedly requested, plaintiffs cannot be considered the "prevailing party." Defendant focuses on the hearing officer's language that she was "not convinced that the May Center represent[ed] an appropriate educational alternative for [L]" as supporting its claim that plaintiffs substantially failed to obtain the relief sought.

## II. DISCUSSION

### A. Defendant's Motion for Reference to a Master

 The Court finds that referring this matter to a Master pursuant to F.R.C.P.

53(b) is unwarranted. Such a reference is to be the "exception and not the rule" and "shall be made only upon a showing that some exceptional condition requires it." F.R.C.P. 53(b). The Court finds that such "exceptional" circumstances do not exist in this case. Accordingly, the motion will be denied.

### B. Motions for Judgment on the Pleadings

■ When both parties move for judgment on the pleadings pursuant to F.R.C.P. 12(c), the Court "must treat each motion as if the other had not been made and by this process determine whether any material issue of fact is presented by the pleadings." Wright & Miller, Federal Practice and Procedure: Civil 2d § 1370 (1990). Upon review of the pleadings and after consideration of each party's motion for judgment on the pleadings, this Court finds that no material issues of fact exist and consequently reaches the merits of the case.

#### 1. *Prevailing Party*

■ The statutory threshold for claiming "prevailing party" status is whether plaintiffs have succeeded on "any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit." *Domegan v. Ponte*, 972 F.2d 401, 406 (1st Cir.1992) citing *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989) [hereinafter *Texas Teachers*]. Though this standard was originally set forth in the context of 42 U.S.C. § 1988, it is "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433, n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983). Furthermore, the standard is a "generous" one. *Id.*, 461 U.S. at 433, 103 S.Ct. at 1939.

■ According to the Supreme Court in *Texas Teachers*,

> The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute. 489 U.S. at 792–93, 109 S.Ct. at 1493–94.

Upon consideration of the overall result of the BSEA hearing, this Court finds that there was such an actual alteration in the legal relationship between plaintiffs and defendant. Though plaintiffs did not succeed in placing their son at the May Center, they did succeed in correcting some of the deficiencies in the defendant's proposed IEP. More importantly, the hearing officer ordered that specific behavioral objectives be developed before the start of the following school year in response to an issue plaintiffs had raised in their initial rejection of the defendant's IEP. Had the plaintiffs accepted either the original IEP or the defendant's settlement offer, it is unlikely that issue would have been addressed. Plaintiffs' success, therefore, was more than "purely technical or de minimis...." *Id.* at 792, 109 S.Ct. at 1493–94. Given the "generous" formulation by the Supreme Court, this Court finds that the plaintiffs were a "prevailing party" for purposes of 20 U.S.C. § 1415(e)(4)(B).

#### 2. *Settlement Exception*

■ Defendant argues, however, that even if plaintiffs are found to be a "prevailing party", 20 U.S.C. § 1415(e)(4)(D) bars their request for attorneys' fees. The relevant portion of that statute provides that:

> No award of attorneys' fees and related costs may be made in any action or proceeding under this subsection for services performed subsequent to the time of a written offer of settlement to a parent or guardian, if ... the court ... finds that the relief finally obtained by the parents or guardian is not more favorable to the parents or guardian than the offer of settlement.

Defendant claims in its brief that the plaintiffs "received *no greater relief* by going forward with the BSEA hearing than they would have received had they accepted the settlement offer."

In particular, defendant points to its May 19 settlement offer to fund L's summer placement at the New England Center for Autism (NECA), in addition to its originally proposed placement at the Beal Center. Af-

ter the plaintiffs rejected the settlement offer, the hearing officer proceeded to order a summer placement for L at NECA, and ultimately ruled that L was to be placed at the Beal Center. Defendant argues that therefore any "relief" that plaintiffs received was not more favorable than that offered in the settlement offer.

Again, however, it is true that plaintiffs were successful in addressing the deficiencies in the original IEP. Though many of the changes which were incorporated into the new IEP resulted from the diagnostic evaluations, and not from a direct order of the hearing officer, the officer did order that specific behavioral objectives be developed. The fact of that success alone refutes defendant's argument that plaintiffs are barred from recovering attorneys' fees.

### 3. *Reasonable Fees*

■■■ Once the plaintiffs have met the generous "prevailing party" threshold, "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. Though the degree of a party's success is not determinative of eligibility for attorneys' fees, it is relevant to the size of the award. *Domegan,* 972 F.2d at 414, citing *Texas Teachers.* Other than that guidepost, however, the district court has broad discretion in setting a reasonable fee. *Domegan,* 972 F.2d at 421. Where plaintiffs have achieved only partial or limited success,

> the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

*Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941.

■■■ In the case at hand, plaintiffs succeeded in removing some of the deficiencies in the original IEP, but failed to secure placement of their child in the May Center. The latter goal was emphasized by plaintiffs in their letter rejecting the settlement offer and again at the BSEA hearing. Upon review of the overall result obtained by plaintiffs in relation to the number of attorney hours spent on the litigation, this Court finds that the plaintiffs were not unqualifiedly successful in their appeal to the BSEA.

This Court finds it impracticable, however, to attempt to separate the time and effort of plaintiffs' attorney expended in protesting the deficiencies in the IEP from the time and effort expended in advocating L's placement at the May Center. Taking into account, then, the limited success of the plaintiffs' actions, this Court finds that an award of one-half of plaintiffs' attorneys' fees, or $9,439.47, is fair and appropriate.

### ORDER

For the foregoing reasons, this Court ORDERS that:

1) the motion of defendant for reference to a master is DENIED;

2) the motion of defendant for judgment on the pleadings is DENIED;

3) the motion of plaintiff for judgment on the pleadings is ALLOWED; and

4) an award of $9,439.47 shall be made to plaintiffs for attorneys' fees incurred in litigating the administrative hearing before the Massachusetts Bureau of Special Education Appeals in June, 1994.

So Ordered.