**ZAK L., by his parents and next friends TRACY L. and Janann L., Plaintiffs,**

v.

**CAMBRIDGE SCHOOL COMMITTEE; Mayor Francis H. Duehay, Chairman; Cambridge School Department; and Bobbie D'Alessandro, Superintendent, Defendants.**

**Civil Action No. 98–10277–GAO.**

United States District Court,
D. Massachusetts.

March 31, 1999.

Mark D. Stern, Law Office of Mark D. Stern, PC, Somerville, MA, for plaintiffs.

Linda A. Stamper, Law Department, City Hall, Cambridge, MA, for defendants.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The plaintiffs brought this action to recover attorneys' fees and costs pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(e)(4)(B). The defendant officials may be collectively referred to as the Cambridge School Department (hereinafter "Cambridge"). Both sides have moved for summary judgment.

### I. Background

The following facts are not subject to genuine dispute:

At the relevant times, Zak L. was a ten-year-old child who resided with his parents in Cambridge, Massachusetts. From a young age, Zak suffered severe and oftentimes violent temper tantrums. From 1993 to 1995, Zak attended the Cambridgeport School, where Cambridge provided Zak with special education services. At all times he was eligible for special transportation arrangements, but his parents chose to drive him to school due to his violent behavior.

Beginning in February, 1996, Zak's special circumstances required him to enroll in the Community Therapeutic Day School located at the Wellington School in Belmont. In June of that year, Zak's Educational Team determined that Zak should continue attending the Wellington School. The transportation plan in Zak's individual education plan (IEP) provided that Zak's parents drive him to school with reimbursement at the state rate.

In early June, 1997, Zak's parents decided that he should attend the Walker School in Needham, a forty-five minute commute from Zak's residence, and his Team agreed. In an IEP dated June 4, 1997, the Team noted that because special transportation was needed, Cambridge would provide daily transportation to and from the Walker School. McCarthy Dep. Ex. 8 at 12.

On July 16, 1997, Dr. Daniel Rosenn, Zak's psychiatrist, wrote to Dr. Daniel McCarthy, Cambridge's Director of the Bureau of Pupil Services, suggesting that Cambridge provide Zak with separate and direct cab transportation to and from the Walker School, at least until Zak adjusted to his new environment. Discussions between Dr. McCarthy and Zak's parents ensued. Eventually, Dr. McCarthy presented Zak's parents with two options. The first offered Zak transportation to and from the Walker School in a Cambridge van with other students. The second option called for Cambridge to reimburse Zak's parents for the costs of separate and direct cab transportation, with the parents to be responsible for all cab arrangements themselves. Of the two offers, Dr. McCarthy believed that the first option, calling for van conveyance was the safer and less restrictive form of transport.

Zak's parents, however, did not believe that Zak was at that time ready to handle a commute in a van with other children. While this was ultimately their goal, they believed that Zak's condition required separate and direct transportation until he became adjusted to his new school. They therefore chose to make arrangements with Yellow Cab Company to separately transport Zak to the Walker School, with Cambridge to cover the costs. On September 3, 4 and 5, 1997, Yellow Cab drove Zak without difficulty. On September 8, citing its inability to guarantee a regular driver, Yellow Cab terminated its agreement to transport Zak. Zak's parents asked Cambridge to make comparable arrangements with another cab company for separate and direct transportation, but Cambridge refused.

On September 9, Zak's parents hired attorney Barbara Jackins, who contacted Dr. McCarthy and asked that he "advise what arrangements the [Cambridge] Bureau [of Pupil Services] will make to provide Zachary with separate and direct transportation between home and the Walker School." Pls.' Opp'n to Defs.' Mot. for Summ.J.Ex. D. Apparently, a member of McCarthy's "clerical staff" informed Jackins that the Bureau proposed van transportation with other children. *Id.* Ex. E. In response, Jackins wrote to Dr. McCarthy on September 11, objecting to a van transport and demanding Cambridge make separate and direct transportation arrangements for Zak, or face a hearing before the Bureau of Special Education Appeals ("BSEA"). McCarthy responded with a same day voice mail left on Jackins' answering machine:

> I have received your fax dated 9–11–97. Our position remains that the Education Plan requires us to provide safe transportation for Zak and that is in a van with other students. I summarily reject all of your requirements, suggestions, findings, allegations, etc. and look forward to arguing this case before a hearing officer. Please advise as to the intentions of your clients. *Id.* Ex. F.

A hearing before the BSEA was soon scheduled for October 3, 1997.

From September 8 until October 3, Zak's parents drove him to the Walker School. In addition to the offer of group

van transportation, Cambridge told Zak's mother that it would reimburse her at the state mileage rate (at the time twenty-two cents per mile) if she drove Zak herself. *See* Janann L. Aff. ¶ 14. This reimbursement rate offer was well below what a private carrier would charge for transportation services. According to Zak's mother, after Yellow Cab ceased transporting Zak on September 8, no one from Cambridge advised her "either that [Cambridge] would provide separate and direct transportation for Zak or that it would pay the actual cost of such a transportation arrangement if I made any such arrangement for Zak." *Id.* Nothing in the record shows that Cambridge notified Zak's parents after September 8, 1997, that it would continue its previous promise to reimburse if the parents made separate transportation arrangements.

On October 3, 1997, the hearing before the BSEA began. The parents requested interim relief seeking "the measures they sought to prove as appropriate during a full hearing." Pls.' Opp'n to Defs.' Mot. for Summ.J.Ex. A ("Interim Order"). The hearing officer granted interim relief, ordering that Cambridge "provide 'separate and direct' specialized transportation to [Zak] .... Should Cambridge be unable or unwilling to provide transportation to [Zak] consistent with this Order the parents may make private transportation arrangements as they deem appropriate and bill the Cambridge Public Schools for the contracted service." *Id.*

During the course of the hearing, all of the plaintiffs' witnesses testified that eventually, when Zak became adjusted to his new school environment, he should ride with other children in a van. However, they further stated that until this adjustment took place, a van with other children was not a viable option, and that therefore separate and direct transportation was necessary.

The hearing concluded on December 15, 1998. In their written closing argument, Zak's parents specifically requested the hearing officer make three findings: (1) that the plan to transport Zak by separate and direct transportation was "reasonable, appropriate, and required for Zak's physical safety and to assure that he made a successful adjustment to his new school;" (2) that Cambridge "impermissibly withdrew from its prior commitment to fund separate and direct transportation for Zak," thereby compelling the parents to transport him on their own; and (3) that they be declared the "prevailing parties" and awarded attorneys' fees and costs. Defs.' Mem. In Supp. of Summ.J.Ex. F ("Closing Argument of Zak L."). They also requested reimbursement for costs they incurred transporting Zak from September 8 through October 10.

For its part, Cambridge sought four findings: (1) that the van is the most appropriate transportation plan for Zak.; (2) that should van transportation prove unsuccessful, Cambridge would provide alternative transportation within forty-eight hours; (3) that Cambridge be allowed to independently evaluate Zak's transportation issues; and (4) a denial of attorneys' fees. *See* Defs.' Mem. In Supp. of Summ.J. at Ex. G ("Defendant's Closing Argument").

On January 15, 1998, the hearing officer concluded that: (1) the interim order would continue in effect in order to provide "separate and direct" transportation to Zak pending the final resolution of the matter; (2) the parents would be reimbursed for any out-of-pocket expenses incurred in providing "separate and direct" transportation; (3) that Cambridge's "offer of a transportation evaluation and modifications to group transportation for [Zak] was/is reasonable and supported by the evidence;" (4) Cambridge would conduct a comprehensive transportation evaluation of Zak; and (5) after analyzing the evaluation, Zak's team should amend his IEP upon approval by his parents. *Id.* Ex. A, Decision.

Thereafter, plaintiffs brought this action to recover attorneys' fees and costs pursuant to the Individuals with Disabilities Education Act.

## II. *Discussion*

The IDEA vests a court with discretion to grant reasonable attorneys' fees to the parents of a child with a disability if they may properly be characterized as "the prevailing party." 20 U.S.C. § 1415(e)(4)(B). The fees awarded must be based on the rates of the community in which the services were rendered. 20 U.S.C. § 1415(e)(4)(C).

The cross-motions for summary judgment present the single question of whether Zak's parents were a "prevailing party" before the BSEA. The plaintiffs claim that their ultimate goal in the administrative hearing was for "separate and direct transportation for Zak until he ... made a successful adjustment to his new school" and the Team determined he was ready for group transportation. Pls' Opp. To Defs.' Mot. for Summ.J. at 6. Since this is clearly what the BSEA granted, they argue, then they were a "prevailing party" for the purposes of § 1415(e)(4)(B). Cambridge does not dispute the amount of the attorneys' fees, but rather asserts that the plaintiffs were not a prevailing party under the statute.

■ A prevailing party must have "'succeed[ed]' on any significant issue in [the] litigation which achieve[d] some of the benefit ... sought in bringing [the] suit.'" *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 791–92, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). At a minimum, a prevailing party must be able "to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teacher's Ass'n*, 489 U.S. at 792, 109 S.Ct. 1486. No prevailing party status will be awarded for relationship alterations that are "merely technical or de minimis in

nature." *Kerry B. v. Union 53 Pub. Schools*, 882 F.Supp. 184, 187 (D.Mass. 1995). Succinctly stated, "a plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). A major component in conducting this analysis is the party's degree of success in the administrative litigation. *See Texas State Teachers Ass'n*, 489 U.S. at 789–90, 109 S.Ct. 1486.

■ In the case at bar, Dr. McCarthy initially offered to reimburse Zak and his family for any expenses they accrued in transporting Zak to and from school, provided that they make the transportation arrangements themselves. Zak's parent accepted the offer. When the Yellow Cab Company refused to drive Zak on September 8, 1997, the parents asked Cambridge what it would do. Cambridge responded with two choices: either accept van transportation with other children or drive Zak yourselves, to be reimbursed at the state mileage rate. *See* Jannan L. Aff. ¶ 14. In so doing, Cambridge apparently stepped back from its previous commitment to reimburse for separate and direct transportation provided the parents made the arrangements. Dr. McCarthy stated in his deposition that Cambridge was still bound by its reimbursement commitment and that it would have paid had Zak's parents arranged for the private transport. However, the contemporaneous record unquestionably indicates that, at the crucial time, Cambridge only offered the options of a van or mileage reimbursement, not full reimbursement for separate and direct transportation.

Because of Cambridge's apparent change of position, Zak's parents initiated the BSEA appeal. In an interim order entered October 6, 1997, the hearing officer required Cambridge to arrange the resumption of separate and direct transportation pending the final outcome of the hearing. The final decision kept the ar-

rangement in force pending further evaluation of Zak's progress and mutual agreement on a different plan.

Had the appeal not been filed, Zak's parents would have had to continue to drive him to and from the Walker School; separate and direct transportation paid for by Cambridge would not have been given. This prospect was altered by the BSEA order. Thus, what Cambridge provided was modified in a way that directly benefitted Zak's parents, and they can therefore rightfully claim prevailing party status. *See Farrar,* 506 U.S. at 111–12, 113 S.Ct. 566.

■ Once a plaintiff qualifies as a prevailing party, the court must "determine what fee is reasonable." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The court has broad discretion in reaching its determination. *See Chagnon v. Town of Shrewsbury,* 901 F.Supp. 32, 36 (D.Mass.1995).

Here, Cambridge does not press any objection to the amount of the fees claimed. The Court has reviewed the application, including specifically the Jackins and Stern affidavits, and concludes that both the rates charged and the time expended are fair and reasonable under all the circumstances.

Accordingly, the Court determines that the plaintiffs ought to recover of Cambridge attorneys' fees as follows:

For the work of Attorney Barbara Jackins, fees in the amount of $9,921.25 and expenses in the amount of $522.25, for a total to Ms. Jackins of $10,443.50.[1]

For the work of Attorney Mark Stern, fees in the amount of $16,477.50 and expenses in the amount of $305.00, for a total of $16,782.50.[2]

It is SO ORDERED.

---

1. *See* Jackins Affidavits, dated April 22, 1998, August 11, 1998, and September 29, 1998.

2. *See* Stern Affidavits, dated August 20, 1998 and October 1, 1998.