**LINDA T. and Gene A., as parents of, and on behalf of their minor son, WILLIAM A., Plaintiffs,**

v.

**RICE LAKE AREA SCHOOL DISTRICT, Defendant.**

No. 03–C–628–C.

United States District Court, W.D. Wisconsin.

Sept. 21, 2004.

Jeffrey Spitzer–Resnick, Madison, WI, for Plaintiffs.

Joanne Harmon Curry, Lathrop & Clark, LLP, Madison, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil suit in which plaintiffs Linda T. and Gene A., who are suing on behalf of their minor child, William A., seek recovery of attorney fees under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–1487. Plaintiffs contend that they were the prevailing party in a hearing conducted by an administrative law judge and are entitled to attorney fees under the IDEA, 20 U.S.C. § 1415(i)(3)(B). Defendant Rice Lake Area School District disputes this allegation and insists that it was the prevailing

party. Alternately, defendant argues that if plaintiffs are found to be the prevailing party, this court should find that the relief granted by the administrative law judge was *de minimis* and does not support an award of attorney fees. If this court finds an award of attorney fees is appropriate, defendant argues, plaintiffs' proposed figure should be reduced because it is unreasonable. Jurisdiction is present under 20 U.S.C. § 1415(i)(3)(A) and 28 U.S.C. § 1331.

Presently before the court are the parties' cross motions for summary judgment. For the reasons stated below, I will grant defendant's motion for summary judgment and deny plaintiffs' motion for summary judgment. Although plaintiffs were the "prevailing party" at the due process hearing, their success was *de minimis* and does not support an award of attorney fees.

A few words of introduction will help place the factual history of this case in context. The Individuals with Disabilities Education Act was enacted to require school systems to provide a free, appropriate public education to children with disabilities. *T.D. v. LaGrange School Dist. No. 102,* 349 F.3d 469, 471 (7th Cir.2003). As part of this requirement, the IDEA requires school districts to have in place an "individualized education program," or IEP, for each disabled student at the start of a new school year. 20 U.S.C. § 1414(d)(2). Each student's program must contain information regarding the student's current educational performance, educational goals set for the student in the upcoming school year and a statement of any special education services that will be provided to the student. § 1414(d)(1)(A). Regulations implementing the IDEA require that each child's education program include "a statement of the special education and related services and supplementary aids and services to be provided to

the child ... and a statement of the program modifications or supports for school personnel that will be provided for the child." 34 C.F.R. § 300.347 (2002).

In addition, the IDEA expresses a preference that disabled children be educated with non-disabled children as much as possible. *Bd. of Education of LaGrange School Dist. No. 105 v. Illinois State Bd. of Education,* 184 F.3d 912, 915 (7th Cir. 1999). To this end, the statute imposes a "least restrictive environment" requirement, which requires that

> [t]o the maximum extent appropriate, children with disabilities ... are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

§ 1412(a)(5)(A). This requirement is known as "mainstreaming." Finally, the IDEA allows parents who present a complaint about the educational placement of their disabled child to request an impartial due process hearing. § 1415(f)(1).

With this background in mind, I turn to the facts of the case. From the parties' proposed findings of fact and the record, I find that the following facts are material and undisputed.

## UNDISPUTED FACTS

### A. *The Parties*

William A. is the child of plaintiffs Linda T. and Gene A. William lives with plaintiff Linda T. in Barron County, Wisconsin. William's father, plaintiff Gene A., also resides in Barron County. William was diagnosed with autism at age three. Wil-

liam was 12 years old and preparing to enter the sixth grade at the time of the events giving rise to this lawsuit. At all times relevant to this lawsuit, William resided and attended school in the Rice Lake Area School District, which provided him with special education services. Defendant Rice Lake Area School District is a duly incorporated school district located in Barron County. Defendant operates a special education program exclusively for disabled students at Red Cedar Hall in Rice Lake.

### B. *The IEP Meeting*

On April 30, 2003, defendant held a meeting to determine William's continuing eligibility for special education, develop his individualized education program and determine where he would attend school in the 2003–2004 school year. Plaintiffs Linda T. and Gene A. attended the meeting. William's program for the 2003–2004 school year called for him to attend special education classes at Red Cedar Hall in the mornings and to attend Rice Lake Middle School in the afternoons. The program indicated that William was "to receive special education 100% of the time" but also noted that William would "participate with non-disabled peers whenever appropriate" in extracurricular and non-academic activities. The "Instructional Services" portion of the program stated that "[o]n-going autism training will be offered for the staff that work with William." The amount and frequency of this training would be "as opportunities arise and are deemed appropriate." Apparently, the meeting ended early when plaintiffs disagreed with defendant's proposed placement of William at Red Cedar Hall.

### C. *The Due Process Hearing*

On June 5, 2003, plaintiffs wrote a letter requesting a due process hearing regarding William's placement for the upcoming school year. Plaintiffs set out three reasons for requesting a hearing. First, plaintiffs claimed that sending William to Red Cedar Hall in the mornings and Rice Lake Middle School in the afternoons denied William his right to receive an education in the least restrictive environment. As a solution, plaintiffs proposed that William not attend Red Cedar Hall at all but instead attend Rice Lake Middle School full-time. Second, plaintiffs noted that there were "three areas in the Instructional Services section of William's IEP that list the amount and frequency as 'as needed.'" Plaintiffs requested that "the IEP state the specific amount and frequency of those services that he will be provided by the school district." Third, plaintiffs requested that defendant retain "an independent consultant in order to train staff how to implement [William's] IEP."

On August 18, 19 and 20, 2003, an administrative law judge conducted the due process hearing. Before the hearing, the judge stated the issues to be decided as follows:

1. Has the District offered the Student placement in the least restrictive environment (LRE) for the 2003–2004 school year?

2. Does the Student's individualized education plan (IEP) state with sufficient specificity the amount and frequency of instructional services, particularly with regard to ongoing autism training for staff that work with the Student?

3. Does the District need to retain an independent consultant to train staff on how to implement the Student's IEP?

At the start of the hearing, the parties reached an agreement privately on revising William's individualized education program to provide greater specificity about the amount and frequency of supplemental aids and services that William would receive. They notified the administrative law judge of this agreement in order to clarify the issues that would be addressed

at the hearing. Then, the administrative law judge asked counsel for plaintiffs to state the remedies his clients were seeking. Counsel stated that

certainly as to placement, Your Honor, here's the issue, as to placement. The remedy is simply—and it was stated in the initial request for due process hearing—that Will attend the Middle School full-time. As to training and independent consultation ... It's very difficult for me to say at this point whether or not, for example, the independent consultation that we have requested will or won't go away based on what I hear during this hearing. And I don't want to box myself in or my client in before we hear all the evidence in this case.

During the hearing, a majority (76% by defendant's count) of the testimony centered on whether William's attendance at Red Cedar Hall would provide him with an education in the least restrictive environment. After the hearing, plaintiffs filed a "Post–Hearing Brief," in which they proposed that the administrative law judge should

1. Order that William's placement be changed to full-time placement at Rice Lake Middle School;

2. Order that the Rice Lake School District provide intensive initial and weekly William-specific training to Middle School staff and aides, during the first quarter of the school year, with further training to be determined by the IEP team; and

3. Order that William's individualized education program be revised to reflect the changes made with regard to these orders.

### D. *The Administrative Law Judge's Decision*

On September 23, 2003, the administrative law judge issued her decision. With respect to whether defendant had offered William placement in the least restrictive environment for the 2003–2004 school year, the administrative law judge adopted a two-part test used by the Court of Appeals for the Fifth Circuit in *Daniel R.R. v. State Bd. of Education*, 874 F.2d 1036, 1046 (5th Cir.1989). According to that test,

[f]irst we ask whether education in the regular classroom, with the use of supplemental aids and services, can be achieved satisfactorily for a given child. If it cannot, ... we ask, second, whether the school has mainstreamed the child to the maximum extent appropriate.

Regarding the first inquiry, the administrative law judge noted that "the focus of the dispute is whether the District's decision to place the Student at Red Cedar Hall for half-days violates the LRE provision of the IDEA." After considering the steps taken by the District to accommodate William's disability, the educational and non-educational benefits William would receive at the Middle School, and William's impact on the classroom environment at the Middle School, the administrative law judge concluded that William would receive little or no educational benefit from placement in the regular education classroom at the Middle School during the morning. Accordingly, she ruled that defendant's placement of William at Red Cedar Hall for half the school day was acceptable.

The administrative law judge then considered whether William's individualized education program mainstreamed him to the maximum extent appropriate. She concluded that the program did not meet this standard because it did not state with sufficient specificity the non-academic opportunities William would have to interact with his non-disabled peers. As an example, she noted that the evidence indicated that William would not "receive a satisfac-

tory education in sixth grade regular education academic classes at the Middle School" but also suggested that William might "benefit from being integrated into non-academic classes such as music, art, field trips, lunch, and possibly even library and computers." Because she viewed the program as incomplete, the administrative law judge ordered the team to reconvene and "review and revise the Student's IEP and Placement Offer for the 2003–2004 school year so that it includes opportunities for the Student to participate with non-disabled peers to the maximum extent appropriate."

Regarding the second issue identified by the administrative law judge, whether the individualized education program stated with sufficient specificity the amount and frequency of instructional services that would be available, in particular the autism training that would be available to staff who worked with William, the administrative law judge found again that the program lacked the requisite specificity. The program stated that staff working with William would receive training "as opportunities arise and are deemed appropriate." The administrative law judge concluded that this language did not "state with sufficient specificity the amount and frequency of autism training that will be offered to staff that work with the Student." She ordered the individualized education program team to reconvene and "determine the amount of ongoing staff training in autism that is appropriate and to review the IEP so that it clearly states the amount and frequency of autism training that will be provided to staff who work with the Student." The administrative law judge denied plaintiffs' request that she order a specific amount and frequency of staff training.

The third issue in the hearing was whether defendant had to retain an independent consultant to train staff on implementation of the program. On this issue, the administrative law judge found that William's teachers had received autism training and had experience working with autistic children. As a result, she concluded that defendant did not have to "retain an independent consultant to train staff on how to implement William's IEP."

The IEP team met on October 23, 2003, to revise the program. The team changed the frequency and amount of staff training from "as opportunities arise and are deemed appropriate" to two hours of training and consultation each week and two half-day sessions of "autism training with full 6th grade team (21 middle school staff members)." In addition, the team added more detail to the frequency and amount of opportunities for William to participate with his non-disabled peers in non-academic activities.

On November 5, 2003, plaintiffs filed a complaint in this court, alleging that they were the prevailing party at the due process hearing and were entitled to have defendant reimburse them for attorney fees they incurred in conducting the due process hearing and in bringing this case.

## DISCUSSION

### A. Standard of Review

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1412 (7th Cir.1989). When the moving party succeeds in showing the absence of a genuine issue as to any material fact, the opposing party must set forth specific facts showing that there is a genuine issue for

trial. Fed.R.Civ.P. 56(e); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). Also, if a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the opposing party is proper. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### B. Analysis of Plaintiffs' IDEA Claim

In seeking reimbursement for the attorney fees they incurred in the due process hearing and the proceedings in this court, plaintiffs rely on 20 U.S.C. § 1415(i)(3)(B), which provides that "[i]n any action or proceeding brought under this section, the court in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is a prevailing party." In addition to fees incurred in litigation, the IDEA authorizes fee awards for services rendered in administrative hearings. *T.D. v. LaGrange School Dist. No. 102,* 349 F.3d 469, 479 (7th Cir.2003); *Brown v. Griggsville Community Unit School Dist. No. 4,* 12 F.3d 681, 683 (7th Cir.1993).

Initially, I note that neither party is challenging the conclusions reached by the administrative law judge in this case and neither party has requested a hearing before this court to submit additional evidence. Therefore, the analysis of plaintiffs' claim requires two steps. First, I must determine whether the plaintiffs were the prevailing party in the due process hearing. Second, if the plaintiffs were the prevailing party, I must determine what amount, if any, constitutes a reasonable attorney fee award. *Jodlowski v. Valley View Community Unit School Dist. # 365–U,* 109 F.3d 1250, 1252 (7th Cir.1997).

### 1. Prevailing party under the IDEA

The term "prevailing party" is a legal term of art used in several federal statutes that contain fee-shifting provisions. *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (discussing attorneys' fees provisions in Fair Housing Amendments Act and Americans with Disabilities Act); *Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (discussing use of term "prevailing party" in Civil Rights Attorneys' Fees Awards Act of 1976). The Supreme Court has encouraged lower courts to interpret these fee-shifting provisions consistently when possible. *Buckhannon,* 532 U.S. at 603 n. 4, 121 S.Ct. 1835; *see also J.C. v. Regional School Dist. 10, Board of Education,* 278 F.3d 119, 123–24 (2d Cir.2002) (discussing *Buckhannon* and concluding that "it is clear that Congress intended 'prevailing party' under the IDEA to have the same meaning as 'prevailing party' under § 1988"). In *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Court stated that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." This relief must take the form of a "judgment on the merits, a consent decree, or some other judicially sanctioned change in the legal relationship of the parties." *Palmetto Properties v. County of DuPage,* 375 F.3d 542, 548 (7th Cir.2004) (quoting *Buckhannon,* 532 U.S. at 604–05, 121 S.Ct. 1835). In sum, a prevailing party must show success on a "significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *T.D.,* 349 F.3d at 479 (quoting *Hensley v.*

*Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

As noted above, it is undisputed that plaintiffs sought three forms of relief in their June 5, 2003, letter requesting a due process hearing. First, plaintiffs wanted to have William enrolled at the Middle School full-time because they thought that his attendance at Red Cedar Hall would violate his right to receive his education in the least restrictive environment. Second, plaintiffs sought to have William's IEP state with greater specificity the amount and frequency of certain services that defendants would provide to William. Before the hearing, the parties agreed voluntarily to revise the program to provide greater specificity with respect to the amount and frequency of supplemental aids and services available to William. Thus, the only issue remaining with respect to plaintiff's second request was whether the program was specific enough with respect to the autism training that would be available to school staff. Third, plaintiffs asked the administrative law judge to order defendant to retain an independent consultant to train school staff on implementing the program.

#### a. *Placement at Red Cedar Hall*

It is undisputed that the administrative law judge rejected plaintiffs' request that William be enrolled at the Middle School full-time. At the same time, she concluded that William's IEP did not offer him an education in the least restrictive environment because it did not specify those extracurricular and non-academic activities in which William could participate with non-disabled students at the Middle School. Plaintiffs argue that they prevailed on this issue because the primary issue at the due process hearing was whether William's individualized education program provided him with an education in the least restrictive environment. According to plaintiffs, the administrative law

judge concluded that the program did not provide an education in the least restrictive environment.

*Jodlowski v. Valley View Community Unit School Dist. # 365–U,* 109 F.3d 1250, raised a situation similar to the present case. The parents of a disabled child and a school district participated in a due process hearing, after which the parents sought attorney fees as the prevailing party. *Id.* at 1251–52. The parties disagreed over how to characterize an issue presented to the hearing officer. To resolve this dispute, the court looked to the hearing officer's decision and the parents' prior characterization of the issue. *Id.* at 1253–54. Applying this approach to the present case, it is clear that the heart of the dispute between the parties concerned William's enrollment at Red Cedar Hall. Although the administrative law judge framed the issue as whether the individualized education program provided William with an education in the least restrictive environment, it is clear from the record that the specific relief plaintiffs sought was William's full-time enrollment at the Middle School; plaintiffs asked for this relief specifically in their letter requesting a due process hearing and their post-hearing brief. Also, the April 2003 meeting to develop William's individualized education program for the 2003–2004 school year ended abruptly when plaintiffs objected to defendant's proposed placement of William at Red Cedar Hall for half-days. In addition, the administrative law judge noted that "the focus of the dispute is whether the District's decision to place the Student at Red Cedar Hall for half-days violates the LRE provision of the IDEA." In sum, plaintiffs' primary goal with respect to the least restrictive environment question was to have William enrolled at the Middle School full-time. Because the administrative law judge denied plaintiffs their re-

quested relief, plaintiffs did not prevail on the least restrictive environment issue.

### b. *Greater specificity with respect to staff autism training*

The second question presented was whether William's program stated with sufficient specificity the frequency and amount of autism training that would be available to school staff who worked with William. The administrative law judge found that the program did not specify in enough detail the amount and frequency of autism training that the Middle School staff would receive. For this reason, she ordered the IEP team to meet again and revise the program to make clear how much training would be provided to school staff. I conclude that this relief entitles plaintiffs to "prevailing party" status as to this claim under the IDEA.

In *Monticello School Dist. No. 25 v. George L.,* 102 F.3d 895, 908 (7th Cir.1996), the court ruled that the parents of a disabled child were the prevailing parties in an administrative hearing because the hearing officer ordered the school district to revise the child's IEP. The hearing officer had ordered the school district to revise the individualized education program to indicate what learning disability services would be available to the child. *Id.* at 900. In addition, at least two other district courts have ruled that parties "prevail" for purposes of the IDEA when the administrative hearing officer orders the school district to revise the individualized education program to be more specific. *Verginia McC v. Corrigan–Camden Independent School Dist.,* 909 F.Supp. 1023, 1027–28, 1030 (E.D.Tex.1995); *Chagnon v. Town of Shrewsbury,* 901 F.Supp. 32, 34–35 (D.Mass.1995). In both *Verginia McC* and *Chagnon,* the parents were deemed to be the prevailing party despite the fact that they did not succeed in changing their child's placement. *Verginia McC,* 909

F.Supp. at 1027–28; *Chagnon,* 901 F.Supp. at 35.

Defendant argues that the judge's order requiring revision of William's individualized education program is best characterized as interim relief for which attorney fees are not available. *Board of Education of Downers Grove Grade School Dist. No. 58 v. Steven L.,* 89 F.3d 464, 469 (7th Cir.1996) (citing *Hunger v. Leininger,* 15 F.3d 664, 670 (7th Cir.1994)). In addition, defendant argues that plaintiffs did not "prevail" because there was no disagreement on the issue whether school staff would receive training. Although this may be true, defendant's argument misses the point. The question presented to the administrative law judge was not whether school staff would receive autism training but rather, whether the individualized education program stated with sufficient clarity the amount and frequency of staff training. In their request for a due process hearing, plaintiffs sought greater specificity with respect to the services and training that would be provided to William and school staff. The parties agreed to the specifics of instructional services that would be provided to William before the hearing. The administrative law judge's order pertained to the remaining area of contention, the specific autism training that defendant would provide for school staff. The order required the IEP team to make the program more specific with respect to staff autism training. To this extent, it constituted relief on an issue raised by plaintiffs. As an order requiring the IEP team to make clear to the parents the amount and frequency of autism training that school staff would undergo, the order materially altered "the legal relationship between the parties" and modified defendant's behavior in a way that directly benefited plaintiffs. *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

c. *Retention of an independent consultant*

Finally, it is undisputed that plaintiffs did not obtain any relief regarding their request that the defendant retain an independent consultant to train school staff on the implementation of William's IEP. Plaintiffs concede that the administrative law judge specifically denied their request that defendant hire an independent consultant.

Although plaintiffs secured relief on only one of three issues, the prevailing party inquiry "does not turn on the magnitude of the relief obtained." *Farrar,* 506 U.S. at 114, 113 S.Ct. 566. I conclude that plaintiffs are the "prevailing party" for the purpose of attorney fees under of the IDEA. I now consider the question of attorney fees.

2. *Attorney fees*

 The IDEA grants district courts discretion to award reasonable attorney fees to prevailing parties. 20 U.S.C. § 1415(i)(3)(B). In determining what constitutes a reasonable fee award, the Supreme Court has stated that the degree to which a plaintiff succeeds is a relevant consideration. *Hensley v. Eckerhart,* 461 U.S. 424, 430, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). However a court must deny attorney fees to a prevailing party when the party succeeds only at a technical or *de minimis* level. *Farrar,* 506 U.S. at 117, 113 S.Ct. 566 (O'Connor, J., concurring). In addition, the Court of Appeals for the Seventh Circuit has stated that no attorneys' fees should be awarded where a party secures only interim relief. *See Hunger v. Leininger,* 15 F.3d 664 (7th Cir.1994) (refusing to award attorney fees where plaintiff's sole relief was in-home transitional services designed to aid child's reentry into school). In the present case, after considering the relief plaintiffs obtained in light of their overall objectives, I

conclude that the judge's remand order constituted *de minimis* relief that does not entitle plaintiffs to an award of attorney fees.

The facts in *George L.,* 102 F.3d at 899–900, are similar to the facts in the present case. In *George L.,* the parents of a child with Attention Deficit Hyperactivity Disorder challenged the individualized education program proposed by the school district and then removed their child from the school district and placed him in a private school. *Id.* at 900. The parents sought an order requiring the district to pay for the cost of sending their child to the private school. After a due process hearing, the hearing officer concluded that the child's individualized education program did not provide a free, appropriate public education as required by the IDEA but also found that the private school preferred by the parents was not the least restrictive environment for the child. *Id.* As a remedy, the hearing officer ordered specific changes to the child's program. The officer "directed the School District to develop an IEP providing individualized learning disabilities resource services" for the child, as well as ADHD-related training for the child's teachers. *Id.* In addition, the officer ordered that specific amounts of time be spent each week in individualized instruction for the child, consultation among the child's teachers, and meetings between the teachers and the child's parents. *Id.*

The school district and the parents appealed the hearing officer's decision to the district court, which concluded that the parents were not the prevailing party under the IDEA because the parents' victories in the case were small when compared to the parents' broader objectives. *Id.* at 907. The Court of Appeals for the Seventh Circuit found that the parents were the prevailing party but upheld the district court's decision not to award attorney fees.

*Id.* at 908. Although the parents had secured "significant changes" to the child's individualized education program, the court noted that the parents failed to convince the hearing officer that the private school offered the least restrictive environment. *Id.*

Plaintiffs are in the same position as the parents in *George L.* They prevailed on their claim that William's IEP needed revisions but lost on the placement issue. It is clear that plaintiffs' primary disagreement with defendant concerned defendant's proposal that William attend Red Cedar Hall in the mornings. Their request for greater specificity in the IEP was a secondary concern. Moreover, the parties agree that the original individualized education program stated that school staff would receive autism training and that William would participate in non-academic activities with non-disabled peers. Thus, the administrative law judge did not require defendant to provide services it had previously refused to provide. *Cf. T.D.*, 349 F.3d at 480 (awarding attorney fees where school district did not acknowledge child's eligibility for IDEA benefits but hearing officer granted child's request for evaluation to determine eligibility). She merely ordered the parties to complete a task they had already begun. Viewed in this light, plaintiffs' success at the due process hearing was *de minimis* and does not support an award of attorney fees.

## ORDER

IT IS ORDERED that defendant's motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED. The clerk of court is directed to enter judgment for defendant and close this case.