# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-3731

LINDA T. and GENE A., as parents of,
and on behalf of their minor son,
WILLIAM A.,

*Plaintiffs-Appellants*,

v.

RICE LAKE AREA SCHOOL DISTRICT,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03 C 628—**Barbara B. Crabb**, *Chief Judge.*

———————

ARGUED MAY 3, 2005—DECIDED AUGUST 2, 2005

———————

Before FLAUM, *Chief Judge*, and KANNE and SYKES,
*Circuit Judges*.

SYKES, *Circuit Judge.* In this case we review the denial
of a claim for attorneys' fees under the Individuals With
Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400
*et seq.* The district court denied the claim because although
Linda T. and Gene A., parents of William A., prevailed in
part in a state administrative agency hearing challenging

certain aspects of William's educational program, their success on the merits was *de minimis*. We affirm.

## I.  Background

William A. is an autistic child who attends the Rice Lake Area School District ("the District") in Barron County, Wisconsin. From age three to six he attended the District's early childhood program located in Red Cedar Hall, a facility that offers a functional-based, prevocational curriculum to disabled students. William attended kindergarten at Tainter Elementary School, and for the first grade he was placed half-day at Red Cedar Hall and half-day at Tainter Elementary. From the second through the fifth grades, William attended Tainter Elementary full-time.

William's intellectual and social development are significantly delayed. According to the District, in August 2003, when William was twelve years old and preparing to enter sixth grade, his reading and math skills were between the mid-first to mid-second grade level. The District determined that William's expressive language and communication abilities were approximately at the level of a 2-to-2-½-year-old, and that in terms of daily living skills such as personal hygiene, dressing, and eating, he functioned at the age of a 3.3-year-old child. William is cheerful and compliant but seldom initiates verbal exchanges and takes cues from peers inconsistently. William was sometimes disruptive in class and was removed from his fifth-grade regular classroom on some occasions.

On April 30, 2003, the District convened an Individualized Education Program ("IEP") meeting to determine William's continuing eligibility for special education, develop an IEP, and determine his placement for the 2003-2004 school year. William's parents participated in the IEP team meeting. The parents and the District had come to very different views about the appropriate placement for William. The

District believed that William would receive little or no educational benefit from being placed full-time at Rice Lake Middle School because the regular sixth-grade curriculum is too complex and fast-paced for him. Although the special education teachers at the Middle School acknowledged that William could work on some of his objectives and goals within a regular classroom, they pointed out that none of William's own objectives and goals are part of the regular sixth-grade curriculum.

The IEP that was developed for William offered placement half-day at Red Cedar Hall and half-day at the Middle School. The description of the special education program in the IEP is the same for both locations and indicates that William will receive "an individually designed program for Autism serviced through the Cognitive Disabilities Program." Under the IEP, William will receive "special education 100% of the time" and "will participate with non-disabled peers whenever appropriate." The IEP also provides that "on-going autism training will be offered for the staff that work with" William, including participation in autism workshops and training, the amount and frequency of which were to be determined "as opportunities arise and are deemed appropriate."

William's parents were dissatisfied with the IEP and requested a due process hearing before the Wisconsin Division of Hearings and Appeals. They challenged the IEP on three grounds. First, they argued that William's placement half-days at Red Cedar Hall denied him the right to receive a free appropriate public education in the least restrictive environment as guaranteed by the "mainstreaming" provision contained in 20 U.S.C. § 1412(a)(5)(A). *Linda T. v. Rice Lake Area Sch. Dist.*, 337 F. Supp. 2d 1135, 1137 (W.D. Wis. 2004). William's parents sought an order placing William at the Middle School full-time. Second, the parents contended that William's IEP did not contain sufficient particulars about the instructional training services to be

provided to the staff. The parents asserted that rather than simply state that such services be provided "as needed," the IEP should specify the amount and frequency of instructional training services that would be provided. Third, the parents requested that the District retain an independent consultant to train staff on how to implement William's IEP. *Id.*

After a three-day hearing and the filing of posthearing briefs, the Administrative Law Judge ("ALJ") issued a decision on the merits of the parents' claim. That decision is the focus of this attorneys' fees dispute. The ALJ concluded that William "would not receive a satisfactory education in the regular education classroom setting at the Middle School during the morning" because the regular education class is substantively unrelated to the goals and objectives of his IEP. *Id.* at 1138. Accordingly, the ALJ held that placing William at Red Cedar Hall for half of the school day was acceptable. *Id.* The ALJ also concluded, however, that the IEP did not identify with sufficient particularity the available and appropriate opportunities for William to interact with nondisabled peers during his half days at the Middle School, instead stating only that he would participate with nondisabled peers "whenever appropriate." *Id.* at 1138-39. The ALJ found this lack of specificity to be inconsistent with the "mainstreaming" standard and ordered the IEP team to reconvene "to determine what mainstreaming opportunities are appropriate for [William] and to revise the IEP and placement offer to include such opportunities to the maximum extent appropriate." *Id.* at 1139.

With respect to the staff training issue, the ALJ also found the language in William's IEP too vague and directed the IEP team to revise the IEP "so that it clearly states the amount and frequency of autism training that will be provided to the staff who work with [William]." *Id.* Finally, the ALJ rejected the parents' request that the district be ordered to hire an independent consultant to train William's teachers. *Id.*

William's parents then filed the present action in the district court seeking attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B) as the prevailing party in the agency proceeding. The parties did not contest the conclusions reached by the ALJ. The only issues before the court were whether William's parents "prevailed" in the legal sense in the agency proceeding, and if so, what amount, if any, would constitute a reasonable fee award. *Id.* at 1140.

The district court held that although the parents did not prevail on the issues of William's placement and the retention of an independent consultant, they were entitled to prevailing party status to the extent that the ALJ ordered the IEP revised to provide greater specificity regarding staff training. *Id.* at 1142. But the court held that the plaintiffs' success before the ALJ was *de minimis* because the issue of greater specificity in the IEP was merely a "secondary concern" and the ALJ's decision did not require the District to provide William with any new or additional services. *Id.* at 1143-44. The court thus declined to award attorneys' fees, citing *Farrar v. Hobby*, 506 U.S. 103, 115 (1992), which holds that a plaintiff who formally but only nominally prevails may be denied recovery of attorneys' fees. William's parents appealed.

## II.  Discussion

The IDEA contains a fee-shifting provision that permits an award of attorneys' fees to a prevailing party: "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). IDEA's fee-shifting provision allows an award of reasonable attorneys' fees to the party who prevails in an administrative proceeding as well as an action in court. *T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 479 (2003). The

parties do not disagree about the district court's determination that the parents prevailed at the due process hearing on the issue of greater specificity in William's IEP regarding teacher training. The only dispute on appeal is whether, having determined that the parents had prevailing party status, the district court erred in denying them attorneys' fees because their success on the merits was *de minimis*.

A party "prevails" for purposes of federal fee-shifting statutes when he or she obtains "actual relief on the merits" of a claim that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. at 111-12. However, the Supreme Court in *Farrar* held that "[i]n some circumstances, even a plaintiff who formally 'prevails' . . . should receive no attorney's fees at all." *Id.* at 115 (citation omitted); *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 907 (7th Cir. 1996). The prevailing party inquiry "does not turn on the magnitude of relief obtained," but the size of the fee award does. *Farrar*, 506 U.S. at 114. The Supreme Court has said that "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Therefore, "the *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989). The reasonable fee award for a prevailing plaintiff who obtains only a "Pyrrhic victory" is zero. *Farrar*, 506 U.S. at 117 (O'Connor, J., concurring).

We review the district court's determination whether to grant attorneys' fees under the IDEA deferentially, reversing only upon finding an abuse of discretion. *George L.*, 102 F.3d at 907 (citing *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988) and *Max M. v. New Trier High Sch. Dist. No.*

*203*, 859 F.2d 1297, 1302 (7th Cir. 1988)). "An abuse of discretion is found only when reasonable persons could not take the view espoused by the district court." *Id.* Here, as we have noted, the district court declined to award attorneys' fees because the degree to which William's parents succeeded at the due process hearing was so slight that it did not support the recovery of any attorneys' fees.

The district court analogized the facts of this case to those in *George L.*, and we find the analogy sound. In *George L.*, the parents of a disabled child convinced a hearing officer that the school district failed to provide their child with a free appropriate public education but did not prevail on their claim that the private school into which they had unilaterally placed him was the least restrictive environment for his education. *George L.*, 102 F.3d at 906-07. The hearing officer ordered specific changes to the child's IEP, including particular amounts of individualized instruction, but declined to authorize placement at the private school and ordered only interim reimbursement of the parents' private school costs until the new IEP was implemented. *Id.* We affirmed the district court's denial of a fee award, noting that under *Farrar*, "when a plaintiff's success is simply technical or *de minimis*, no fees may be awarded, even if the plaintiff has succeeded on an issue in the litigation and may thus be technically a 'prevailing party.'" *Id.* at 907. Although the parents in *George L.* won changes in their child's educational program, they lost their primary claim regarding his placement in the private school. Accordingly, we concluded that the district court did not "abuse[ ] its discretion in finding such achievement *de minimis* in the context of the Parents' broader goals in this case." *Id.* at 908.

Similarly, in this case, William's parents succeeded only on their claim that William's IEP required greater specificity in certain discrete areas; they lost on the placement issue, which was most important in the context of the administrative proceeding as a whole. As the district court

noted, the ALJ did not require the provision of any additional or different services to William; by requiring greater specificity in the IEP, the ALJ was simply ordering the District to complete an evaluation it had already begun. *Linda T.*, 377 F. Supp. 2d at 1144. We see no abuse of discretion in the district court's reasoned determination that this degree of success is *de minimis* and insufficient to support an award of attorneys' fees.

The plaintiffs argue that the district court's analysis was deficient because the court failed to take into account a 1997 amendment to 20 U.S.C. § 1415(i)(3)(D), which, they contend, creates a presumption in favor of an award of attorneys' fees under the circumstances of this case. In 1997 Congress amended the fee-shifting statute as part of a broad overhaul of the IDEA. *See* Pub. L. No. 105-17, 111 Stat. 37 (1997). Among other changes, the following limitation was added to the fee-shifting provision:

> Attorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e) of this section that is conducted prior to the filing of a complaint under subsection (b)(6) or (k) of this section.

20 U.S.C. § 1415(i)(3)(D)(ii).[1]

The parents argue that this new language creates a "presumptive eligibility" for attorneys' fees in cases where, as here, a new IEP meeting is ordered as a result of an ad-

---

[1] Effective July 1, 2005, this subsection now reads: "Attorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a medication described in subsection (e) of this section." *See* Pub. L. No. 108-446, 118 Stat. 2715 (2004).

ministrative proceeding. The amendment cannot reasonably be read in this way. We note first that the amendment pertains to claims for attorneys' fees associated with IEP meetings; the claim currently before the court is one for fees associated with the proceeding before the ALJ, not fees associated with the new IEP the ALJ ordered.

As for the substance of the argument, the 1997 amendment is plainly a *limitation* on awards of attorneys' fees: it prohibits recovery of fees associated with IEP meetings unless the meeting is convened by order of a court or administrative agency. This language does not create a "presumptive eligibility" to an award of attorneys' fees by inverse implication; it *removes* discretion from the court over a certain category of fees but does not *compel* the exercise of the court's discretion in favor of the category of fees included in the prohibition's "unless" clause. The court's general discretion to award attorneys' fees remains governed by § 1415(i)(3)(B), which requires the court to determine prevailing party status and what amount of fees, if any, is reasonable under the circumstances. The 1997 amendment prohibits the court from including in any fee award a certain type of attorneys' fees; it does not purport to alter the basic statutory framework for determining whether a fee award is appropriate in the first instance.

We have previously held that the 1997 amendments prohibiting recovery of attorneys' fees in certain circumstances do not "indicate a Congressional intent about anything related to the 'prevailing party' requirement" in the IDEA fee-shifting provision. *T.D.*, 349 F.3d at 476. Rejecting as "quite strained" an argument similar to that advanced here, we concluded in *T.D.* that the new fee-limiting provisions "do not inform anything about the meaning of the term 'prevailing party' in the IDEA because they are relevant only after a plaintiff has been deemed a 'prevailing party.'" *Id.* In the same vein, we conclude here that the fee-limiting provision in § 1415(i)(3)(D)(ii) constrains the exercise of the

court's discretion over the size of a fee award under § 1415(i)(3)(B) to the extent that it excludes fees incurred in connection with IEP meetings except under certain limited circumstances; the limiting provision does not create a presumptive entitlement to fees where the exception to the exclusion applies.

This interpretation of the statute is reinforced by a House Report—cited by William's parents and an amicus— which accompanied the draft legislation:

> The Committee believes that the IEP process should be devoted to determining the needs of the child and planning for the child's education with parents and school personnel. To that end, the bill specifically excludes the payment of attorneys' fees for attorney participation in IEP meetings, unless such meetings are convened as a result of an administrative proceeding or judicial action.
>  . . . .
>
> Questions have been raised regarding the relationship between the extent of success of the parents and the amount of attorneys' fees a court may award. In addressing this question, the Committee believes the amount of any award of attorneys' fees to a prevailing party under part B shall be determined in accordance with the law established by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and its progeny.
>
> As we stated in the 1986 report accompanying the legislation that added the attorneys' fees provisions: "It is the committee's intent that the terms 'prevailing party' and 'reasonable' be construed consistent with the U.S. Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983)."

H.R. REP. NO. 105-95, at 105-06 (1997), *reprinted in* 1997 U.S.C.C.A.N. 78, 103. When the Supreme Court held in *Farrar* that *de minimis* success on the merits will not sup-

port an award of attorneys' fees, it relied explicitly on *Hensley. See Farrar*, 506 U.S. at 114. If "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained," *Hensley*, 461 U.S. at 436, it follows that there is a certain point below which the plaintiffs' success will support no award at all. Nothing in the 1997 fee-limiting amendments to the IDEA affects this principle, derived from *Farrar* and *Hensley*.

The district court reasonably concluded that although William's parents achieved something of legal significance at the due process hearing, their victory was *de minimis* and did not justify an award of fees. This was not an abuse of discretion. The judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*